Victor F. DiVIVO, et al.

v.

Roscoe L. EGGER, Jr., etc., et al.

In re GRAND JURY INVESTIGATION (Victor F. DiVIVO).

Civ. No. K–83–4122.
Misc. No. 708–A.

United States District Court,
D. Maryland.

Dec. 28, 1984.

---

Allen L. Schwait, Cecilia Januszkiewicz and Ronald B. Rubin, Baltimore, Md., for plaintiffs.

J. Brian Ferrel, Tax Div., U.S. Dept. of Justice, Washington, D.C. and J. Frederick Motz, U.S. Atty., and Ty Cobb, Asst. U.S. Atty., Baltimore, Md., for defendants.

FRANK A. KAUFMAN, Chief Judge.

In March 1977, the Internal Revenue Service (IRS) began an income tax investigation of plaintiffs Victor F. DiVivo and his wife. The IRS completed the criminal tax investigation in June 1979. The special agents in charge of that investigation recommended that DiVivo be prosecuted for evasion of his individual income taxes for the years 1974, 1975 and 1976. The case then was referred to the office of the United States Attorney in this District for prosecution. In January 1981, a grand jury investigation of DiVivo's tax affairs was commenced by that office. Three Special IRS Agents, Donald Bell, Joseph Sapp and Joseph Dengler, who had participated in the criminal tax investigation of DiVivo, were assigned to assist the grand jury investigation. Some of the documentary evidence gathered during the criminal tax investigation was used in the grand jury investigation and some of the witnesses interviewed during that investigation appeared before the grand jury. The record to date in this litigation does not disclose how much, if any, of documentary evidence and/or testimony of witnesses or other materials presented to the grand jury constitute "matters occurring before the grand jury," as those words are used in Federal Criminal Rule 6(e)(2) and (3)(A). *See, e.g., In re Sells*, 719 F.2d 985, 988 n. 2 (9th Cir.1983); *In re Doe*, 537 F.Supp. 1038, 1043–47 (D.R.I.1982).

On October 2, 1981, DiVivo and others were indicted in a twenty-seven count indictment for conspiracy, tax evasion and false statements. On March 3, 1982, DiVivo pled guilty to Count 10 of that indictment, which charged tax evasion for the year 1975. *United States v. DiVivo*, Criminal No. M–81–00453 (D.Md.). On April 15, 1982, DiVivo was sentenced in that case by Judge Miller of this Court. During the March 3, 1982 and April 15, 1982 rearraignment and sentencing proceedings, the Government presented to Judge Miller on

the record, in open Court, extensive detailed accounts of the factual bases of the offense to which DiVivo pled guilty.

On August 31, 1982, Judge Thomsen of this Court, pursuant to a motion filed in Misc. No. 708–A by the United States Attorney, entered an *ex parte* Order pursuant to Federal Criminal Rule 6(e). The Order authorized the United States Attorney for this District to disclose and to make available to the IRS the books, records, documents, evidence, transcripts of testimony and other materials obtained by the grand jury in connection with its investigation of DiVivo, for use by the IRS in connection with its investigation of possible civil tax violations by DiVivo. The Government's motion for the Order met the tests set forth in *In re Grand Jury Subpoenas, April, 1978, at Baltimore,* 581 F.2d 1103, 1110 (4th Cir.1978) (Winter, J.), and *In re December 1974 Term Grand Jury Investigation,* 449 F.Supp. 743, 751 (D.Md.1978) (Miller, J.); but did not meet the standards subsequently established by the Supreme Court on June 30, 1983 in *United States v. Baggot,* 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983), and *United States v.*

*Sells,* 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983).

In September 1982, Revenue Agent Dengler was reassigned from the grand jury investigation to the civil tax investigation of DiVivo. Dengler then began to inspect the material disclosed pursuant to the Rule 6(e) Order, and to commence civil tax investigations of V.M.B., Inc. and Italian Delight, Inc., corporations allegedly controlled by DiVivo.

On June 30, 1983, the Supreme Court held in *United States v. Sells, supra,* that Federal Criminal Rule 6(e)(3)(A)(i) provides automatic access only to those government "attorneys who conduct the criminal matters to which the [grand jury] materials pertain," *Sells,* 463 U.S. at ——, 103 S.Ct. at 3140, 77 L.Ed.2d at 754, and that in order for other government attorneys and their staffs to obtain disclosure of those materials, the Government must proceed under Federal Criminal Rule 6(e)(3)(C)(i), and, in so doing, must make "a strong showing of particularized need." *Id.* 463 U.S. at ——, 103 S.Ct. at 3148, 77 L.Ed.2d at 764.[1] In *United States v. Baggot, su-*

---

**1.** Federal Criminal Rule 6(e)(2) and (3) provides, in part:

(2) **General Rule of Secrecy.**

A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

(3) **Exceptions.**

(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—

(i) an attorney for the government for use in the performance of such attorney's duty; and

(ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law.

(B) Any person to whom matters are disclosed under subparagraph (A)(ii) of this

paragraph shall not utilize that grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce federal criminal law. An attorney for the government shall promptly provide the district court, before which was impaneled the grand jury whose material has been so disclosed, with the names of the persons to whom such disclosure has been made.

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding;

(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury; or

(iii) when the disclosure is made by an attorney for the government to another federal grand jury.

If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct.

*pra,* the Supreme Court held that the Government could not obtain grand jury materials under (A)(i) to perform the "non-litigative function of assessing taxes rather than to prepare for or to conduct litigation," *Baggot,* 463 U.S. at ——, 103 S.Ct. at 3169, 77 L.Ed.2d at 793; that the "purpose" of "an IRS audit of civil tax liability" "is not to prepare for or conduct litigation, but to assess the amount of tax liability through administrative channels" (*id.* 463 U.S. at ——, 103 S.Ct. at 3167, 77 L.Ed.2d at 791 (footnote omitted)); and that, accordingly, a civil tax audit is not an occurrence "preliminarily to or in connection with a judicial proceeding" as those words are used in (C)(i).

On December 1, 1983, plaintiffs filed a complaint in Civil No. K–83–4122 seeking to have this Court revoke its August 31, 1982 6(e) Order in Misc. No. 708–A and enjoin the Government from using any information obtained pursuant to the 6(e) Order. On January 12, 1984, this Court entered the following Order, providing, *inter alia:*

> [I]t is this *12th* day of January, 1984, ORDERED:
>
> 1. All grand jury materials (including copies, summaries, abstracts, and products derived therefrom) disclosed pursuant to this Court's Order of August 31, 1982 in Misc. No. 708A, shall be and remain maintained and preserved by their respective custodians, and shall not be disclosed to or used by any persons in connection with the tax liabilities of Victor F. DiVivo and Rose DiVivo, except in connection with the defense of these actions, until April 16, 1984. Any disclosure or use of grand jury material after the institution of the above-captioned actions in connection with the tax liabilities of others cannot be used by the government to support any legal or factual argument in connection with the tax liabilities of Victor F. DiVivo and Rose DiVivo, pending the final resolution of the subject matter of these actions.

The above set forth provisions of that Order have been continued in force and effect to and including the date hereof.

The two cases, Civil No. K–83–4122 and Misc. No. 708–A, are hereby deemed consolidated for all purposes by this Court pursuant to Federal Civil Rule 42(a). Plaintiffs seemingly seek in this litigation the total revocation of the August 31, 1982 Order so that the Government not only may not obtain, pursuant to that Order, any disclosure after December 1, 1983, but also may not use information disclosed to it after August 31, 1982 pursuant to this Court's Order of that latter date. The Government, in opposition, takes the position that *Baggot* and *Sells* should not be applied to this Court's August 31, 1982 Order and that that Order should be fully effective with regard to the past and to the future. In so contending, the Government relies upon the nonretroactivity standards enunciated in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). In essence, the Government takes the position that this Court, in applying appropriate standards of nonretroactivity, should establish a "bright-line" test, *i.e.,* that any 6(e) order issued prior to June 30, 1983 (the date the Supreme Court filed its opinions in *Sells* and *Baggot*) by a federal district court in compliance with the law of the Circuit (in which that district court sits) in force and effect on the date of such order, should remain totally effective from the date of its issuance up to and including the dates of final conclusion of any civil tax investigation and of any civil tax litigation resulting from such investigation. In addition, the Government asserts that this Court is barred by the Anti-Injunction Act, 26 U.S.C. § 7421, and by the doctrine of sovereign immunity from granting any of the relief sought herein by plaintiffs in Civil No. K–83–4122. In *Sells,* Justice Brennan wrote that the district court had granted the disclosure order sought by the Government on the ground that attorneys in the Civil Division of the Department of Justice were "entitled to disclosure as a matter of right under Rule 6(e)(3)(A)(I)" and also that the

Government had shown particularized need for disclosure. The Court of Appeals vacated and remanded, holding that Civil Division attorneys could obtain disclosure only by showing particularized need under Rule 6(e)(3)(C)(i), and that the District Court had not applied a correct standard of particularized need. *In re Grand Jury Investigation No. 78–184 (Sells, Inc.),* 642 F.2d 1184 (9th Cir. 1981).[6]

---

[6] The District Court refused to stay disclosure. A single circuit judge did issue an interim stay, but a two-judge panel vacated it and refused a further stay. Hence, the Civil Division attorneys and their assistants enjoyed access to the grand jury materials for more than two years while this case was pending in the Court of Appeals. During this time the Government filed its False Claims Act suit against respondents. The Civil Division has been denied access since the Court of Appeals issued its mandate.

The Government argued in the Court of Appeals that the case was moot because the disclosure sought to be prevented had already occurred. The Court of Appeals correctly rejected the contention:

"The controversy here is still a live one. By its terms the disclosure order grants access to all attorneys for the Civil Division, their paralegal and secretarial staff, and all other necessary assistants. Each day this order remains effective the veil of secrecy is lifted higher by disclosure to additional personnel and by the continued access of those to whom the materials have already been disclosed. We cannot restore the secrecy that has already been lost but we can grant partial relief by preventing further disclosure." *In re Grand Jury Investigation No. 78–184 (Sells, Inc.),* 642 F.2d 1184, 1187–1188 (9th Cir.1981).

*United States v. Sells Engineering, Inc.,* 463 U.S. at ——, 103 S.Ct. at 3137, 77 L.Ed.2d at 751 (footnote 5 omitted).

■ While Justice Brennan, in the course of so writing in *Sells,* was speaking to the Government's mootness contention, the Justice's above-quoted footnote 6 observations would appear equally applicable to the Government's Anti-Injunction Act and sovereign immunity claims because what plaintiffs seek herein is to have this Court deny to the Government the use of information which the Government would not

have obtained but for *this Court's* Order of August 31, 1982, an Order which the Supreme Court's June 30, 1983 *Sells* and *Baggot* opinions teach should not have been issued. That quest for relief herein by plaintiffs requires this Court to examine the effect of one of its own Orders, and is neither barred by mootness, the Anti-Injunction Act or sovereign immunity, and requires this Court to look to the *Chevron* retroactivity versus nonretroactivity standards. Nor do any of the views expressed by this Court in *Silbert v. United States,* 282 F.Supp. 635 (D.Md.1968), call for any different approach. In *Silbert,* this Court concluded, *inter alia,* that certain evidence seized by law enforcement officials, who had acted pursuant to Orders of this Court issued before subsequent Supreme Court opinions in other cases held that such Orders should not have been issued, would not be suppressed on Fourth Amendment grounds because no deterrent purpose would be served in a situation in which the law enforcement officials had acted in accordance with Orders of this Court. In the within litigation, the relief sought by plaintiffs is not relief related to any need to deter any governmental action in the future but rather to restore and observe the requirements of grand jury secrecy.

In the within litigation, while, as noted *supra* at 3, the August 31, 1982 Order was issued after the Government had complied with the standards of *In re Grand Jury Subpoenas, April, 1978, at Baltimore,* 581 F.2d *supra* at 1110, and *In re December 1974 Term Grand Jury Investigation,* 449 F.Supp. *supra* at 743, 751—standards which on August 31, 1982 reflected the law of this Circuit, the Government's submission failed to meet the "particularized need" standard subsequently articulated by Justice Brennan in *Sells* as applicable to a (C)(i) order. In any event, however, the Government's submission which led to Judge Thomsen's August 31, 1982 Order did not relate to anything which was "prelimin[ary] to or in connection with a judicial

proceeding" as those words in (C)(i) were construed by Justice Brennan in *Baggot.*[2]

In *In re Sells,* 719 F.2d 985 (9th Cir.1983) (*Sells II*), Judge Sneed reviewed the history of the litigation therein, as follows:

> The circumstances leading to this appeal involve a long and as yet incomplete investigation that in 1973 began as an IRS audit of appellants' 1972 and 1973 tax returns. IRS agents discovered indications of fraud and referred the case to the Intelligence Division of the IRS to determine whether criminal violations had occurred. Although the investigation was hindered when appellants refused to comply with administrative summonses for certain corporate records, IRS agents eventually found sufficient evidence of criminal activity to recommend that a grand jury be convened.
>
> In 1976 a federal grand jury began an investigation of charges that appellants had criminally defrauded the United States in connection with contracts with the United States Navy, and evaded the federal income tax. The grand jury subpoenaed, and appellants produced, many of the materials earlier sought by way of administrative summonses. The investigation continued with IRS personnel assisting Justice Department attorneys. Ultimately, the grand jury returned indictments against four individual defendants, including appellants Witte and Sells. Appellants each pled guilty to one count of conspiracy to defraud the government by obstructing an IRS investigation. All other charges were dismissed.
>
> On December 18, 1978, attorneys employed in the Civil Division of the Justice Department moved in the district court

for disclosure of the documents, exhibits, and testimony acquired by the grand jury in conjunction with an investigation into potential causes of action against appellants under the False Claims Act, 31 U.S.C. §§ 231–235 (1976 & Supp. V 1981), and at common law. The district court held that the Civil Division was entitled to the materials as a matter of right under Rule 6(e)(3)(A)(i), of the Federal Rules of Criminal Procedure. This court reversed, holding that Rule 6(e)(3)(A)(i) is inapplicable, and remanded for a hearing to determine if Rule 6(e)(3)(C)(i) authorizes disclosure. *In re Grand Jury Investigation No. 78–184 (Sells, Inc.),* 642 F.2d 1184 (9th Cir.1981) (*Sells I*). The Supreme Court recently affirmed our decision, *sub nom. United States v. Sells Engineering, Inc.,* 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983) (*Sells II*), and the case is now on remand in the district court.

The United States also sought to fix appellants' civil tax liability. In June of 1980, it moved for disclosure of the grand jury materials for use by IRS agents in their renewed efforts to determine the amount of appellants' tax liabilities for the year 1972 and 1973. Following an adversarial hearing, and following a court ordered narrowing of the requested scope of disclosure and distribution, the district court signed the order granting disclosure pursuant to Rule 6(e)(3)(C)(i) from which this appeal is taken. A request by appellants for a stay pending appeal was denied.

*Id.* at 987–88 (footnote omitted).

In *Sells II,* Judge Sneed, after so reciting the facts and after analyzing the Supreme

---

**2.** The Government's position in these cases is that Judge Thomsen's August 31, 1982 Order should be fully effective both before and after the date he entered his stay Order on January 12, 1984. The position of plaintiffs is that the Government should not be permitted to use, in connection with civil tax matters, any of the information which the Government learned as a result of Judge Thomsen's August 31, 1982 Order. Further presentations and analyses of the facts as required by this opinion will call for this Court to determine whether any different treatment should be accorded to information

learned by the Government prior to January 12, 1984, or prior to December 1, 1983, the date plaintiffs instituted these proceedings, or prior to June 30, 1983, the date the Supreme Court filed its opinions in *Sells* and *Baggot.* Whether or not the quest of plaintiffs for suppression and the opposition of the Government to any suppression will be treated differently with regard to any of the above indicated possible periods of time will be later determined by this Court in accordance with the views discussed in this opinion.

Court's June 30, 1983 opinions in *Sells* and *Baggot,* concluded that the Government had failed in *Sells II* to meet either the "judicial proceeding" or the particularized need standards of (C)(i), vacated the district court's order and remanded *Sells II* to the district court with instructions to that court to "take such steps as are, in its discretion, necessary to protect appellants from the effects of past disclosure." *Id.* at 992.

In *Sells II,* as Chief Judge Fisher has written in *Stein v. United States,* 587 F.Supp. 6 (D.N.J.1984) (at 7), the "Ninth Circuit had before it the issue of the propriety of a rule 6(e) order. Having delayed its decision until the Supreme Court decided *Baggot,* the court reversed the district court, applying 'current law' ...." *See Sells II* at 990.[3] In *Stein,* Judge Fisher wrote that "[u]nlike the Ninth Circuit [in *Sells II* ], this court is not acting as an 'appellate court'" and that—

> [t]he present case has nothing to do with applying current law to a pending rule 6(e) application. The only issue is whether the *Baggot* decision is to be enforced retroactively in order to quash three IRS summonses arising from a valid rule 6(e) order from which no appeal was taken. The Ninth Circuit did not resolve this precise issue in *Sells II.*

(587 F.Supp. at 7). Judge Fisher then considered the issue of the prospective versus the retroactive application of *Baggot* in the light of the three *Chevron* factors, *i.e.,* (1) whether the new rule of law overruled "clear past precedent" or decided an "issue of first impression whose resolution was not clearly foreshadowed," *Chevron* 404 U.S. at 106, 92 S.Ct. at 355; (2) whether "looking to the prior history of the rule in question, its purpose and effect ... retrospective operation will further or retard its operation," (*id.* at 107, 92 S.Ct. at 355); and (3) whether "inequity" or "injustice or hardship" will be occasioned by retroactive application (*id.* at 107, 92 S.Ct. at 355). After so noting the *Chevron* standards,

Judge Fisher held (587 F.Supp. at 8) that the taxpayer "failed to meet the threshold requirement of a clear break with past precedent or establish that the issue was one of first impression" in the light of the contrary positions of several of the federal circuit courts of appeal prior to the Supreme Court's opinion in *Baggot.* Commenting upon Judge Fisher's opinion in *Stein,* the Tax court later commented that Judge Fisher—

> concluded that *Baggot* ... did not represent a "clear break" with past precedent, or constitute a case of first impression. Accordingly, [Judge Fisher] found the threshold test of *Chevron Oil* not to be satisfied. However, in reaching its conclusion that *Baggot* did not constitute a case of first impression, [Judge Fisher] considered the existence of prior *lower court* precedent which adopted the analysis ultimately adopted by the Supreme Court in *Baggot* to be dispositive. Upon this point, we disagree. The threshold inquiry of whether a case is one of first impression is clearly intended to focus on the Supreme Court's prior precedent (see *Solem v. Stumes,* 465 U.S. [——] at —— [104 S.Ct. 1338 at 1341, 79 L.Ed.2d 579 (1984) ], *not* on the state of lower court decisions.

*Kluger v. Comm'r of Internal Revenue,* 83 T.C. 309, 331 n. 13 (U.S.T.C.1984). Nevertheless, in *Kluger,* the Tax Court held "that the decisions of the Supreme Court in *Baggot* and *Sells* ... are not to be applied retroactively to invalidate final rule 6(e) orders *under collateral attack in this Court,*" *id.* at 335 (emphasis supplied), and, accordingly, denied the taxpayer's motion to suppress evidence obtained under a (C)(i) order issued by the United States District Court for the Eastern District of New York on March 29, 1983, prior to the Supreme Court's June 30, 1983 opinions in *Sells* and *Baggot.* Seemingly, that (C)(i) order was not withdrawn or challenged in the Eastern District of New York or challenged except in the Tax Court case. As far as this Court

---

**3.** "The general rule is that an appellate court should apply the law as it stands on the date of

the appellate decision." *Sells II* at 990.

knows, *Stein* and *Kluger* are the only decided cases in which the issue of retroactivity, *vel non,* of *Sells* and *Baggot* has been decided. In *Stein,* the situation was not unlike the present situation in this litigation. In *Kluger,* the attack upon the district court's 6(e)(3)(C)(i) order was collaterally launched for the first time in a Tax Court proceeding.

In *United States v. Manglitz,* 590 F.Supp. 177 (D.Md.1984), *appeal pending to the U.S. Court of Appeals for the Fourth Circuit,* this Court held that the Government was not precluded from using in a civil tax audit and subsequent civil litigation grand jury and other information which had been disclosed in open court on the record in the course of rearraignment and sentencing proceedings involving the taxpayer as a criminal defendant. This Court adheres to that view herein and therefore will need to know what information plaintiffs seek to suppress herein which the Government cannot use under *Manglitz.* In addition, as required of the district court by the Ninth Circuit's remand in *Sells II,* 719 F.2d *supra* at 988 n. 2, this Court must determine whether any of the information disclosed to the Government pursuant to Judge Thomsen's August 31, 1982 Order in Misc. No. 708–A constitutes "matters occurring before the grand jury" as those words are used in Rule 6(e)(2) and 6(e)(3)(A). If all of the information obtained by the Government pursuant to the said August 31, 1982 (C)(i) Order, both before and since it was issued, can be utilized by the Government under *Manglitz* and/or because all such information does not constitute "matters occurring before the grand jury," then there is no need for this Court to address itself to the question of whether the Government is precluded by the Supreme Court's opinions in *Sells* and *Baggot* from utilizing, in connection with the pending civil tax audit involved in this litigation, information obtained by the Government between August 31, 1982 and January 12, 1984, pursuant to the August 31, 1982 Order.[4] The question which is suggested by this analysis is why, if all of the information, to which the Government under the August 31, 1982 Order obtained the right of access, should turn out to have been available to the Government for use in the civil tax investigation in the absence of such Order, the Government sought and obtained the August 31, 1982 Order in the first place. Seemingly, the answer to that question is that the obtention of that Order rendered it unnecessary for the Government to particularize and specify as required in order to come under *Manglitz* and/or the nonapplicability of Rule 6(e)'s "matters occurring before the grand jury" provisions. But while that answer may explain why the Government sought the said August 31, 1982 Order, it does not, in this Court's view, relieve a district court, in the circumstances of plaintiffs' quest for relief herein, from examining in detail the extent to which the grand jury materials obtained pursuant to the August 31, 1982 6(e) Order issued by this Court prior to but violative of the Supreme Court's opinions in *Sells* and *Baggot,* may be used by the Government in connection with civil tax matters if the Government would not have had access to such materials for such purpose but for such an Order.

Tentatively, this Court is of the view, in agreement with that expressed by the Tax Court in *Kluger,* that the first *Chevron* factor suggests the nonretroactive applica-

---

4. In *Sells,* 463 U.S. at —— n. 15, 103 S.Ct. at 3141 n. 15, 77 L.Ed.2d at 757 n. 15, Justice Brennan wrote:

This case involves only access by Civil Division attorneys who played no part in the criminal prosecution of respondents. It does not present any issue concerning continued use of grand jury materials, in the civil phase of a dispute, by an attorney who himself conducted the criminal prosecution. We decline to address that problem in this case.

Whether an IRS agent such as Dengler, who had access to grand jury materials during the criminal phase of the case, may have access to them for use in a subsequent civil context, without a new (C)(i) order meeting the requirements of *Sells* and *Baggot,* is a question which this Court need not reach at this time but may need to resolve before the within litigation is concluded.

tion herein of *Sells* and *Baggot*. However, the third—and also the second—*Chevron* factors call upon this Court to be informed of and to examine in specific detail the need, if any, of the Government, in connection with its ongoing civil tax audit of the taxpayer, DiVivo, to utilize any "matters occurring before the grand jury" as those words appear in Rule 6(e)(3)(A), which the Government may not already utilize under *Manglitz*. In other words, just as the Government, in a post *Sells—Baggot* context, must show "particularized need," so the Government, in order to cause this Court not to apply *Sells* and *Baggot* retroactively to the period commencing August 31, 1982, must show why the Government needs to use grand jury materials to which the Government would not have been entitled to access but for the August 31, 1982 Order issued by this Court prior to the Supreme Court's opinions in *Sells* and *Baggot*, and why the Government should enjoy such use for one extra moment after January 12, 1984 when Judge Thomsen granted interim relief from his August 31, 1982 Order, and perhaps for one extra moment after an earlier date.[5] As the Ninth Circuit wrote in *Sells I*, 642 F.2d at 1187–88: "Each day this order remains effective the veil of secrecy is lifted higher ...." But what, if anything, the Government learned from grand jury materials between August 31, 1982 and January 12, 1984, the details of what the Government may have so learned, and the importance of the same to the Government and to the taxpayer, will control the extent, if any, to which plaintiffs are entitled to relief and retroactive application of *Sells* and *Baggot*, and the extent to which, if any, the Government requires the absence of such relief and nonretroactive application of *Sells* and *Baggot*.

■ The Government, relying upon *Bowen v. United States*, 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975), asks this Court to decide the issue of prospectivity versus retroactivity at the threshold in this litigation. In *Bowen*, Justice Powell wrote (at 920) that "district courts and courts of appeals should follow our practice, when issues of both retroactivity and *application of constitutional doctrine* are raised, of deciding the retroactivity issue first" in order to avoid deciding constitutional questions unnecessarily. (Emphasis supplied). Herein, there are not only no constitutional issues facing this Court, there are no questions concerning the construction of Federal Criminal Rule 6. Rather the only issues pending herein relate to retroactivity. While the retroactivity question and its subparts may well usually be addressed in terms of general applicability, the underlying philosophy of *Sells* and *Baggot* suggest to this Court the need to approach, in the context of the within type of litigation, the Federal Criminal Rule 6(e) grand jury secrecy retroactive versus nonretroactive issues on a case-by-case, individual-fact basis. That puts the Government and the taxpayer in no different position in situations like the within litigation than they are both placed in by *Sells* and *Baggot* themselves each time, in a post-June 30, 1983 time frame, the IRS engages in a civil tax investigation after a federal grand jury criminal inquiry and seeks, or desires to seek, a (C)(i) order.

This Court is today issuing an Order which will require submission of further presentations by the parties in accordance with this opinion and which will extend this Court's stay Order of January 12, 1984 while such submissions are made and are considered by this Court.

---

**5.** *See* note 2 *supra*.