**Nat TARNOPOL as President of Brunswick Record Corp., et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 780–87C.**

United States Claims Court.

Sept. 21, 1989.

**90**

Solaman G. Lippman, Washington, D.C., for plaintiffs.

James M. Kinsella, with whom were Asst. Atty. John R. Bolton, Asst. Director M. Susan Burnett, and Director David M. Cohen, Washington, D.C., for defendant. Mary Lewis, Dept. of Treasury, of counsel.

## OPINION

WIESE, Judge.

Plaintiffs seek damages for the Government's failure to return personal and corporate business records that had been turned over to a United States Attorney in 1974 pursuant to subpoenas issued in aid of a then ongoing grand jury investigation. Defendant has moved to dismiss the suit for lack of jurisdiction over the subject matter or, alternatively, for failure to state a claim on which relief can be granted. Plaintiffs oppose the motion. The issues have been fully briefed and argued; we decide in defendant's favor.

### I

In connection with a grand jury investigation undertaken in 1974, plaintiff Nat Tarnopol (now deceased) was served with subpoenas *duces tecum* requesting personal records and the business records of Brunswick Record Corporation and Dakar Records, two companies for which he served, respectively, as president and as chief executive officer.[1] On June 25, 1975, following delivery of the requested records to the United States Attorney in New Jersey, an indictment was returned against Nat Tarnopol and others. Criminal pro-

ceedings began in the United States District Court for the District of New Jersey on January 13, 1976. At the commencement of the trial, several counts of the indictment (those charging plaintiffs with personal and corporate tax evasion) were severed and transferred for prosecution to the United States District Court for the Southern District of New York.

The New Jersey district court proceedings resulted in convictions for mail and wire fraud. These convictions were overturned on appeal, *United States v. Tarnopol*, 561 F.2d 466 (3rd Cir.1977), and the case was remanded for trial on one count that later was dismissed. Thereafter, proceedings on the criminal charges pending in the Southern District went forward; these were resolved by guilty pleas entered in 1977.

Later in the same year (1977), the Commissioner of Internal Revenue assessed income tax deficiencies against Nat Tarnopol. Although it is not clear when Nat Tarnopol first requested return of his subpoenaed records from the Government, the facts indicate that he tried to obtain them during the course of the ensuing litigation in the United States Tax Court. The Government was unable to locate the documents and the tax suit was consequently dismissed in 1984. To this date, the Government has not been able to locate the missing business records. Plaintiffs filed suit in this court on December 24, 1987.

### II

The suit is grounded on three alternative theories of recovery: (1) that an implied-in-fact contract of bailment was created upon delivery of the subpoenaed records to the Government thus giving rise to a duty on the Government's part to return the documents or to respond in damages for failing to do so; (2) that Rule 17 of the Federal Rules of Criminal Procedure subsumes an obligation on the Government's part to return subpoenaed documents and that

---

**1.** Paul Tarnopol, son of Nat Tarnopol, appears here as successor to his father's business inter-

ests.

breach of that obligation gives rise to a right to money damages;[2] and (3) that the Government's failure to return the documents constitutes a taking of property for which compensation is due under the Fifth Amendment of the Constitution. The Government meets these arguments on the merits contending that they lack support, both in fact and in law. We do not go that far with the analysis. In our view, the facts of the controversy, even when viewed in a light most favorable to plaintiffs, all point to a cause of action that unquestionably is time barred.

Title 28 of the United States Code, section 2501, states that every claim over which this court has jurisdiction "shall be barred unless the petition thereon is filed within six years after such claim first accrues." For purposes of this statute, a claim accrues when "all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money." *Nager Electric Co. v. United States*, 177 Ct.Cl. 234, 240, 368 F.2d 847, 851 (1966). The application of this rule dictates dismissal of plaintiffs' claim for lack of timeliness.

To explain: The injury about which plaintiffs complain is the deprivation of their business records. That deprivation first became actionable when the Government's right to use of the records ceased and plaintiffs could demand their return. Plaintiffs say that this event did not occur until 1984—the year in which the Tax Court proceedings were finally dismissed on the basis of the Government's acknowledgement at that time that it could not locate the records.

■ We do not agree with this position. The Government may not retain subpoenaed documents beyond the life of the criminal investigatory proceedings for which the disclosure was authorized unless retention and/or use beyond this purpose

has been expressly authorized by the district court. A full exposition of this point is given in *Robert Hawthorne, Inc. v. Director of Internal Revenue*, 406 F.Supp. 1098 (E.D.Pa.1976), a case examining the grand jury process and the Government's use of subpoenaed materials. Among the arguments presented in that suit was the contention that the Government's right to require disclosure of business records did not encompass the right to retain those records on a temporary basis. *Id.* at 1129. The court rejected this argument, saying that:

> the grand jury and its executive agents (the United States Attorney's office and the I.R.S. agents subject to a valid 6(e) order)[3] may retain the plaintiff's original documents while they are performing their lawful criminal investigatory functions, so long as the plaintiff's legitimate business need for the documents is at all times accommodated in some reasonable way. When the legitimate, good faith, criminal investigatory use of the documents has ended, however, or when the grand jury is discharged without the investigation's having been resubmitted or scheduled for resubmission to a new grand jury, then all the original subpoenaed materials must be returned immediately to their owner, the plaintiff. Subpoenaed documents may only be retained after this time, for whatever purpose, on the authority of a judicial order of impoundment, duly applied for by the government.

*Id.* at 1130 (footnote omitted).

■ There is nothing in the record before us to suggest that the district court (under whose aegis the grand jury functions) either ordered the impoundment of plaintiffs' records or, what would seem more likely here, authorized their disclo-

---

**2.** Rule 17 of the Federal Rules of Criminal Procedure states in pertinent part: "A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein."

**3.** A "6(e) order" is an order of the district court issued under Rule 6 of the Federal Rules of Criminal Procedure authorizing disclosure of grand jury materials to investigative personnel from Government agencies whose expertise is necessary to assist Justice Department attorneys in conducting criminal investigations.

sure to the Internal Revenue Service.[4] Since "[t]he policies of Rule 6 require that any disclosure [of materials subpoenaed by a grand jury] to attorneys other than prosecutors be judicially supervised rather than automatic," *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 435, 103 S.Ct. 3133, 3144, 77 L.Ed.2d 743 (1983), it follows that, absent a court-sanctioned use of subpoenaed documents for civil purposes, the Government had no right to retain plaintiffs' documents after the conclusion of the criminal prosecutions.

The criminal proceedings against plaintiffs, as we have indicated, ended in the latter part of 1977. Their conclusion marked the terminus of the Government's right to retain plaintiffs' documents, and thus was the point at which plaintiffs' cause of action arose. Since a cause of action in this court must be asserted within six years from the time the right to sue accrues, it follows that plaintiffs' claim (asserted here at the end of 1987) may not be

heard. The untimeliness of the claim puts it beyond our jurisdiction to consider.[5]

Plaintiffs seek to avoid this result by claiming they were unaware of their right to demand return of the records at the close of the criminal proceedings. The short answer to this contention is that ignorance of rights that should have been known cannot postpone the accrual of a cause of action or toll the statute of limitations. In suits against the sovereign, diligence in the protection of rights is essential. *See Mitchell v. United States*, 13 Cl.Ct. 474, 476–77 (1987).

## III

The Government's motion to dismiss is granted.

---

4. In *United States v. Baggot,* 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983), it was held that under Rule 6(e)(3)(C)(i) of the Federal Rules of Criminal Procedure a district court could authorize disclosure of grand jury materials in a non-criminal proceeding—for example, a civil tax suit—only where the disclosure would assist the civil authority in the preparation or conduct of a judicial proceeding. Thus, disclosure for use in an IRS audit of civil tax liability was ruled impermissible since the purpose of an audit is to assess the amount of tax liability and not to prepare for or conduct litigation.

5. In suits against the sovereign, the statute of limitations, 28 U.S.C. §§ 2401, 2501, operates as

a time-limited waiver of sovereign immunity. The statute is a substantive element of every claim for money asserted in this court; therefore, a claim not timely asserted is beyond the court's power to entertain. In this court, then, untimeliness is seen as requiring dismissal for want of jurisdiction, *see, e.g., Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1582 (Fed.Cir.1988); although, in other contexts, untimeliness in the assertion of rights is viewed as a failure to state a claim upon which relief can be granted. *See* C. Wright & A. Miller, *Federal Practice and Procedure* § 1357 at 608 (1969).