**ESTATE OF Cordial GRYDER, Deceased, Pansy Gryder, Executrix, and Pansy Gryder, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 82–1597.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1983.

Decided April 29, 1983.

Rehearing and Rehearing En Banc Denied June 9, 1983.

Irl B. Baris, St. Louis, Mo., for appellants.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Ann Belanger Durney, Elaine F. Ferris, Attys., Tax Div., Dept. of Justice, Washington, D.C., for appellee.

Before BRIGHT, ARNOLD and JOHN R. GIBSON, Circuit Judges.

ARNOLD, Circuit Judge.

This is an appeal from the judgment of the United States Tax Court[1] against a widow, Pansy Gryder, and the estate of her late husband, Cordial Gryder. The taxpayers contend that (1) the Tax Court erred in allowing the introduction of secondary evidence of corporate records, (2) there was insufficient evidence to sustain the Tax Court's finding of fraud, (3) the assessments were barred by the statute of limitations, and (4) Pansy Gryder was an innocent spouse. For the reasons set forth below, we affirm.

I.

Cordial Gryder, a Missouri resident, owned and managed a car dealership, DeVille Motors, Inc. Cordial paid many of his and Pansy's personal expenses with checks drawn on various corporate accounts. For example, checks drawn on DeVille were used to pay the Gryders' personal utility bills, to pay for improvements to their home, to make mortgage payments on real property they owned, and to purchase stocks and other personal property in their names and for their personal use. The Gryders failed to report these benefits as income on their joint tax returns, and the

1. The Hon. Irene F. Scott, Judge.

corporation deducted many of the payments as business expenses. The Gryders also failed to report certain other income, including dividends, interest, and rent.

In 1975 Cordial was convicted in federal district court of filing false tax returns for the years 1967 through 1971. While the conviction was on appeal to this Court, Cordial died, and we vacated the conviction and dismissed the case as moot. Pansy took most of the property by survivorship, and she succeeded to the small amount of property in the probate estate as sole legatee. She is the executrix.

On February 5, 1976, the Commissioner assessed more than $100,000 in deficiencies and fraud penalties[2] against Cordial and Pansy on their joint income tax returns for 1967 through 1971. On July 21, 1976, the Commissioner assessed more than $160,000 in deficiencies and fraud penalties against Cordial as the transferee of DeVille Motors on the corporate tax returns for 1967 through 1970. Ultimately, the Tax Court upheld the Commissioner's determination, almost in full. The Tax Court found that the penalty assessments were justified because Cordial had fraudulent intent, and that although the Commissioner had failed to show that Pansy had any fraudulent intent, she was not an innocent spouse under 26 U.S.C. § 6013(e) (1976), because she should have known that there were omissions of income from the joint returns and she benefitted from the omissions.[3]

### II.

At trial, the Commissioner was unable to produce the originals of many corporate records, including journals and check-stub books. These records were destroyed by employees of the Internal Revenue Service after Cordial's criminal trial. The Tax Court's finding that these documents were destroyed negligently but not in bad faith is not clearly erroneous; thus, the Commissioner could seek to prove their contents by secondary evidence. Fed.R.Evid. 1004(1).

The Commissioner partially relied on portions of the transcript of the criminal trial in which witnesses had testified about the contents of some of the destroyed records. This was proper secondary evidence under the Federal Rules. *E.g., United States v. Gerhart,* 538 F.2d 807, 809 (8th Cir.1976). However, the transcript remained hearsay even though the requirements of Rule 1004 had been met. Nonetheless, the Tax Court did not err in admitting it. Neither the Commissioner nor the taxpayers brought the hearsay problem clearly to the court's attention. Moreover, the parties stipulated that two important witnesses' testimony about the contents of certain records would be the same as their testimony at the criminal trial. Finally, we believe that the evidence would have been admissible in any event either as recorded recollection, Fed.R.Evid. 803(5), or under the "catch-all" exceptions, Fed.R.Evid. 803(24), 804(b)(5).

### III.

The taxpayers argue that the evidence is insufficient to show fraud and that the amount of the deficiencies determined by the Tax Court is too high. We disagree. The Tax Court was the trier of fact, charged with judging the credibility of the witnesses, and it did not believe the taxpayers' evidence. We cannot say that its findings were clearly erroneous.

### IV.

The normal period of limitations for the assessment of taxes is three years after the return was filed. 26 U.S.C. § 6501(a) (1976). Under 26 U.S.C. § 6501(c)(1) (1976), however, when fraud is shown, "the tax may be assessed ... at any time." Thus, the Tax Court's finding that the individual joint returns and the corporate returns were fraudulent lifted the bar of the stat-

---

**2.** The fraud penalties were assessed under 26 U.S.C. § 6653(b) (1976).

**3.** Thus, Cordial's estate was liable for all the deficiencies and penalties, while Pansy was jointly and severally liable only for the deficiencies on the individual joint returns.

ute of limitations for 1967 through 1970[4] with respect to each case.[5] The taxpayers argue that the three-year statute should have applied because the Commissioner's investigation was complete by late 1973, and that his delay in issuing the notices of deficiency worked an unconscionable hardship on the taxpayers, since Cordial was dead and many original records were unavailable. This contention is wholly without merit; the language of § 6501(c)(1) is clear.[6]

### V.

▪ The taxpayers argue that the Tax Court erred in holding that Pansy was not an innocent spouse under 26 U.S.C. § 6013(e) (1976), so as to be relieved of joint liability for the deficiencies.[7] Pansy had the burden of proving that she had no reason to know of the omitted income, and we cannot say that the Tax Court's determination that she did not meet this burden is clearly erroneous. We also find no fault with the Tax Court's decision that it would not be inequitable to hold Pansy liable for the deficiency. The taxpayers' argument that she did not receive a significant benefit from the items omitted from gross income is without merit. She received title to a considerable amount of property purchased with funds from DeVille, which was not reported as income. It does not matter that she received full title by devise and survivorship. See S.Rep. No. 1537, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad.News 6089, 6092.

The judgment is affirmed.

4. The assessment regarding the individual return for 1971 was within the three-year period of limitations, since that return was filed on February 20, 1973.

5. The Tax Court found it unnecessary to determine whether 26 U.S.C. § 6501(e)(1) (1976), which provides for a six-year period of limitation for returns which omit properly includible gross income in excess of 25% of that reported, applied. We do not decide the question, either.

6. This is not a case in which the taxpayer filed an amended, nonfraudulent return. *Compare*

*Dowell v. Comm'r of Internal Revenue,* 614 F.2d 1263 (10th Cir.1980) (holding that the Commissioner must assess the deficiency with respect to a fraudulent return within three years after an amended, nonfraudulent return is filed), *with Badaracco v. Comm'r of Internal Revenue,* 693 F.2d 298 (3d Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 2084, 77 L.Ed.2d 296 (1983) (contra).

7. Since Pansy was found to be not guilty of fraud, she was not liable for the fraud penalties. 26 U.S.C. § 6653(b) (1976).