**Phyllis ALTMAN, Individually and as Surviving Spouse of Bennett Altman, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 86 C 2506.**

United States District Court, E.D. New York.

June 18, 1990.

Kase & Druker (James O. Druker, and Paula Schwartz Frome, of counsel), Garden City, N.Y., for plaintiff.

Andrew J. Maloney, U.S. Atty. (Igou Allbray, Deputy Chief, Civ. Div., of counsel), Brooklyn, N.Y., U.S. Dept. of Justice, Tax Div. (Deborah S. Meland, Trial Atty., of counsel), Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiff brought this action under the Internal Revenue Code, 26 U.S.C. § 7422, seeking the refund of income taxes, interest and penalties erroneously and illegally assessed. The court has jurisdiction pursuant to 28 U.S.C. § 1346(a)(1). Plaintiff now moves for summary judgment.

### I.

The parties have stipulated to the facts, as follows.

Plaintiff, Phyllis Altman, is the surviving spouse of Bennett Altman, who died on December 25, 1981. The Altmans filed joint tax returns for the years 1976 and 1978.

In 1980, a Special Grand Jury in the Eastern District of New York investigated whether Bennett Altman and other persons violated the Internal Revenue Laws. On October 10, 1980, Bennett Altman pled guilty to one count of a nine count information. That count charged him with a violation of 26 U.S.C. § 7201 for the tax year 1978. Other counts of the information charged him and two others, Joseph and Anthony Cecere, with involvement in a money laundering scheme and with knowingly and willfully failing to file a return in 1977 and filing false and fraudulent tax returns in 1976 and 1978.

In September 1981 the United States applied for an order under Federal Rule of Criminal Procedure 6(e) for release of "books, records, other documents and testimony obtained during the Grand Jury's investigation" which the Assistant United States Attorney described as "vitally necessary to determine, establish, assess and collect the federal civil tax liabilities of BENNETT ALTMAN, JOSEPH CECERE and ANTHONY CECERE." Upon this application, Judge Charles P. Sifton entered an order on September 25, 1981, under Rule 6(e) authorizing the United States Attorney to:

make available to agents of the Internal Revenue Service all books, records, and documents subpoenaed by or presented to the Grand Jury pertaining to the above-captioned cause and the transcripts of testimony presented to the Grand Jury in that connection for purposes of determining, establishing, assessing and collecting the federal civil tax liabilities of BENNETT ALTMAN, JOSEPH CECERE AND ANTHONY CECERE, and for use in any judicial proceeding related thereto.

On April 9, 1982, the Internal Revenue Service (IRS) issued a statutory notice of deficiency to Bennett Altman's estate care of Phyllis Altman, saying that their income tax payments for 1976 and 1978 were deficient in the amounts of $19,168.00 and $38,177.00 respectively, and assessing penalties of $9,584.00 and $19,089.00 respectively. The deficiencies were due to unreported amounts Bennett Altman received through the money laundering scheme charged against him. The notice also said that civil fraud penalties should be charged because the underpayment was due to Bennett Altman's fraudulent conduct. No part of the underpayment, however, was due to fraud on the part of Phyllis Altman, and so no fraud penalty was assessed against her.

Phyllis Altman filed, in February 1983, a claim for abatement of the assessments against her for 1976 and 1978 on the grounds she should be granted innocent spouse status under 26 U.S.C. § 6013(e). She thereafter sold the family home, paid the outstanding tax liabilities, and in 1984, claimed a refund of the amounts paid. In her claim, she said that the IRS improperly

used Grand Jury material as the basis of the assessments against her and the denial to her of innocent spouse status. She further claimed that the Rule 6(e) order under which the Grand Jury evidence was obtained would not meet the standards of subsequent Supreme Court decisions. The IRS denied her claim for a refund on March 7, 1986.

The government concedes that the IRS used some of the Grand Jury material in determining Phyllis Altman's tax deficiency and in denying her claim for refund as an innocent spouse. The government also concedes that the Rule 6(e) order would not satisfy the standards for such orders were it issued today.

## II.

Rule 6(e) of the Federal Rules of Criminal Procedure prohibits disclosure of "matters occurring before the grand jury" with certain exceptions. Fed.R.Crim.P. 6(e)(2). The relevant exception in this case permits disclosure "when so directed by a court preliminarily to or in connection with a judicial proceeding". Fed.R.Crim.P. 6(e)(3)(C)(i).

On June 30, 1983, the Supreme Court, in *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983), held that the government was required to make a showing of particularized need to obtain disclosure of grand jury materials for use in civil suits. In *United States v. Baggot*, 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983), decided the same day, the Court held that Rule 6(e)(3)(C)(i) does not permit disclosure to the IRS for use in a civil tax audit, which is normally neither in connection with nor preliminary to a judicial proceeding. It is undisputed that the Assistant United States Attorney's affidavit does not amount to a showing of "particularized need" for disclosure, and that disclosure for the purpose of assessing civil tax liability would be improper today.

Plaintiff argues that it was improper to disclose the grand jury materials even for the initial determination of the assessments, because Judge Sifton's order of Sep-

tember 25, 1981 would not pass muster under *Sells* and *Baggot*. However, courts that have considered a similar argument have declined to void a final Rule 6(e) order. *See, e.g., In re Disclosure of Grand Jury Material (Basic Earth Science Systems, Inc.)*, 821 F.2d 1290, 1293 (7th Cir. 1987); *United States v. (Under Seal)*, 783 F.2d 450, 453 (4th Cir.1986) *cert. denied sub nom. Raven's Hollow, Ltd. v. United States*, 481 U.S. 1032, 107 S.Ct. 1964, 95 L.Ed.2d 535 (1987); *In re Grand Jury Proceedings (Kluger)*, 631 F.Supp. 1542 (E.D. N.Y.1986) *aff'd* 827 F.2d 868 (2d Cir.1987). This court declines as well.

Most courts considering the validity of disclosures under pre-*Sells* and *Baggot* Rule 6(e) orders have applied the retroactivity analysis of *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). In that case, the Supreme Court set forth three factors for a court to consider in weighing retroactive application: first, whether the rule to be applied establishes a new principle of law; second, whether retroactive application furthers the new rule; and third, whether retroactive application produces inequitable results. *Id.* at 106–07, 92 S.Ct. at 355.

Analysis under *Chevron* leads the court to conclude retroactive application is inappropriate. *Sells* established a new legal standard for the government's showing of particularized need for disclosure, and *Baggot* resolved conflicting authority on the propriety of disclosure for civil tax audits. *See Kluger v. C.I.R.*, 83 T.C. 309, 331–333 (1984) and *(Under Seal)* 783 F.2d at 453. In this case, invalidating the assessment of the Altmans' tax liability will not cure or deter the issuance of a defective disclosure order; the decisions of *Sells* and *Baggot* accomplish that. Finally, there is no argument that the tax and penalties assessed against Bennett Altman are not due. The IRS made its assessment of his tax liability in reliance on a facially valid order, *cf. Caprio v. C.I.R.*, 787 F.2d 109 (3d Cir.1986), and to invalidate the assessment would be inequitable.

The Seventh Circuit has declined to consider the retroactive effect of *Sells* and

*Baggot* to disclosure orders, reasoning that an unappealed Rule 6(e) order is a final judgment that "remains binding regardless of any change in the law" until modified by the court that entered it. *(Basic Earth Science Systems) v. United States*, 821 F.2d 1290, 1293 (7th Cir.1987). Under this approach, the conclusion is the same. Judge Sifton's order was never appealed and thus is final and valid under the law existing at the time it was issued. As the Court of Appeals for the Fourth Circuit observed in *United States v. (Under Seal)*, 783 F.2d 450, 453 (4th Cir.1986), *Sells* and *Baggot* did not invalidate all outstanding Rule 6(e) orders that were inconsistent with their holdings, but set new standards for courts to follow from that point onward.

Though modification of a pre-*Sells* and *Baggot* disclosure order may be appropriate, *see (Kluger)*, 631 F.Supp. 1542 (E.D.N.Y.1986), plaintiffs have not requested a modification. In the meantime, Judge Sifton's order remains in force.

### III.

■ Plaintiff's argument that disclosure in this case exceeded the terms of Judge Sifton's order has more merit. The government correctly points out that Phyllis Altman is jointly liable for deficiencies in the returns she jointly filed with her husband. *See Sonneborn v. Commissioner*, 57 T.C. 373, 380–81 (1971). Assessing his liability for the years in question amounts to assessing hers as well. However, she may be relieved of that joint liability if she can establish she was an "innocent spouse" under § 6013(e) of the Internal Revenue Code. To do that, she must show she neither knew of nor had reason to know of, nor benefitted from the unreported income, and that the unreported income exceeded 25% of the gross income reported on her joint returns. *See Ketchum v. C.I.R.*, 697 F.2d 466, 468 (2d Cir.1982).

The Supreme Court in *Baggot* emphasized that when determining whether a disclosure is proper under Rule 6(e) "[t]he focus is on the *actual use* to be made of the material." 463 U.S. at 480, 103 S.Ct. at 3167 (emphasis in the original). Judge Sif-

ton's order specified disclosure for the purpose of assessing and collecting the tax liability of Bennett Altman and the Ceceres. Nowhere on its face does it authorize disclosure for the purpose of determining Phyllis Altman's liability for the tax deficiencies of her husband.

"[I]n considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries." *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979). The harms that flow from improper disclosure are to both the institution of the grand jury and the individuals involved in its deliberations. Secrecy furthers grand jury proceedings by minimizing the possibility of inducements or reprisals directed at participants, as well as the possibility of flight on the part of those who may be indicted. *Id.* at 219, 99 S.Ct. at 1673. It also serves the privacy interests of those implicated in grand jury investigations, shielding from public opprobrium persons who ultimately are exonerated. *Id.*

The Supreme Court in *Sells* laid particular emphasis on how judicial supervision of disclosure to government attorneys other than prosecutors works to assure the integrity of the grand jury, a body with extraordinary investigative powers. 463 U.S. at 432–33, 103 S.Ct. at 3142–43. In particular, judicial supervision maintains the normal limits on the government's powers of investigation and discovery in the civil context, and inhibits misuse of the grand jury as an instrument for generating evidence for civil suits. *Id.*

The exclusionary rule developed in the context of evidence obtained from illegal searches and seizures provides a useful guide to a court's discretion as to whether to suppress improperly disclosed grand jury evidence, as both it and Rule 6(e) are directed towards instances where the government has exceeded its legal authority. *See Weeks v. United States*, 232 U.S. 383, 393, 34 S.Ct. 341, 344, 58 L.Ed. 652

(1914) (law enforcement should not be at expense of constitutional rights) and *Douglas Oil*, 441 U.S. at 218 n. 9, 99 S.Ct. at 1672 n. 9 (original purpose of grand jury secrecy protection against overreaching Crown).

With this in mind, the court notes the scope of protection may somewhat differ in these two contexts. The exclusionary rule may only be asserted by the person whose Fourth Amendment rights were violated by an unlawful search or seizure. *Alderman v. United States*, 394 U.S. 165, 174–75, 89 S.Ct. 961, 967, 22 L.Ed.2d 176 (1969). Grand Jury secrecy, however, protects not only the privacy interests of persons but of the institution itself; hence Rule 6(e)(2) prohibits disclosure of all "matters occurring before the grand jury," regardless of whom they concern. It is because the grand jury is granted extraordinary powers of investigation that "the use of those powers ought to be limited as far as reasonably possible to the accomplishment of [its] task." *Sells*, 463 U.S. at 434–45, 103 S.Ct. at 3143–44.

In arguing that it may properly rely on information culled from the grand jury materials, the government relies on the decision *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). In that decision, the Court declined to apply the exclusionary rule to evidence obtained by a state law enforcement officer in good faith reliance on an invalid search warrant in a federal civil tax proceeding. Merely to state the case demonstrates it is inapposite to the action presented here, where federal officials obtained evidence pursuant to a valid order, and then used it for a purpose unauthorized by the court.

Moreover, this is not a case where the government attorneys privy to the grand jury investigation use those materials in preparing the civil phase of the same investigation. *See United States v. John Doe, Inc. I*, 481 U.S. 102, 107 S.Ct. 1656, 95 L.Ed.2d 94 (1987). Plaintiff's attorney affirms that after the IRS determined plaintiff was an "innocent spouse" for purposes of assessing fraud penalties, IRS agent Marc Brody said he would consult with the "Intelligence Agents" and examine the grand jury material to determine if plaintiff was an "innocent spouse" for purposes of tax liability. The government does not contest this version of events, which demonstrates a further disclosure of grand jury materials beyond the scope of Judge Sifton's order.

The present case falls much closer to that of *Pizzarello v. United States*, 408 F.2d 579 (2d Cir.) *cert. denied*, 396 U.S. 986, 90 S.Ct. 481, 24 L.Ed.2d 450 (1969), in which the court held that evidence illegally seized by IRS agents in the course of a criminal investigation could not be used as the basis for assessment of federal civil tax liability. The rationale for this rule of exclusion was further refined in *Tirado v. C.I.R.*, 689 F.2d 307 (2d Cir.1982) *cert. denied* 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983). There the court, in assessing the likely deterrent effect of excluding evidence, focussed on the relationship between the search and the proceeding in which the evidence is used. *Id.* at 312. In that case, the court determined that to suppress in a civil tax proceeding evidence illegally seized by narcotics agents would have a minimal deterrent effect.

That is not true here. It is clear that the disclosure of grand jury materials to Agent Brody specifically contemplated the use to which the materials were put, that is, determining plaintiff's innocent spouse status. The deterrent effect of denying the IRS use of these materials would be as direct as the suppression of the fruits of an unlawful search in a criminal case.

The disclosure of bank records subpoenaed by the grand jury to an IRS agent would not necessarily be improper, unless they revealed the scope or direction of the grand jury investigation. *See United States v. Lartey*, 716 F.2d 955, 964 (2d Cir.1983). However, the bank records here were accompanied by summaries prepared by the IRS and the government. They presumably provide a roadmap for the money laundering scheme the bank records document. The grand jury materials also included witness testimony and special

agent reports, hardly matters obtainable through ordinary discovery.

Though the court determines there has been a disclosure of grand jury materials in violation of Fed.R.Crim.P. 6(e), the parties have not adequately focussed on what relief the court may provide that would be appropriate in this situation, under either that rule or 26 U.S.C. § 7422. Where the government has relied on improperly disclosed materials in a civil action for restitution, the court has excluded these documents from calculations of liability. *See United States v. Sutton,* 795 F.2d 1040, 1049–1050 (Em.App.1986) *cert. denied* 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 828 (1987). But there is no hint in the record before this court to what degree the decision of plaintiff's "innocent spouse" status was determined by grand jury materials.

Nor is there evidence in the record establishing plaintiff to be an "innocent spouse" under § 6013. The mere fact the IRS did not assess fraud penalties against plaintiff under 26 U.S.C. § 6653(b) is insufficient, as she may have had no fraudulent intent and yet have benefitted from and been aware of her husband's unreported income. *See e.g., Estate of Gryder v. C.I.R.,* 705 F.2d 336, 338 (8th Cir.1983). In the absence of any evidence that plaintiff fulfills the statutory requirements for "innocent spouse" status under § 6013, the court will not enter judgment on this issue. *See Rodman v. C.I.R.,* 542 F.2d 845, 859–60 (2d Cir. 1976).

Plaintiff's motion is denied with leave to renew upon the submission of further evidence. The parties are invited to brief the issue of whether the present judicial proceeding is one in connection with which the court may entertain an application for a new Rule 6(e) order. Unless and until such an order is entered, the government is prohibited from reviewing or using any materials obtained from the grand jury in relation to this action.

So ordered.