**UNITED STATES of America, Plaintiff,**

v.

**Bessie BUSHLOW a/k/a Bessie Bock, Theodore W. Bushlow, and Greenpoint Savings Bank, Defendants.**

**No. 88 CV 4020.**

United States District Court, E.D. New York.

Sept. 8, 1993.

Zachary W. Carter, U.S. Atty. (Jody Kasten, of counsel), Brooklyn, NY, Dept. of Justice, Tax Div. (Charles M. Greene, Peter Sklarew, Andrew Plepler), Washington, DC, for plaintiff.

Daniel F. Hayes, Garden City, NY, for defendant Bessie Bushlow.

Solleder & Solleder (George J. Solleder, of counsel), Mineola, NY, for defendant Theodore W. Bushlow.

Cullen & Dykman (James G. Ryan, of counsel), Garden City, NY, for defendant Greenpoint Sav. Bank.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiff, the United States of America (the government), brought this action against defendants—a widow, her son, and a bank—seeking to collect on tax liabilities of the widow and her deceased husband.

Plaintiff moves for summary judgment. Defendants cross-move for summary judgment.

### I.

The following background facts are not disputed.

At all relevant times until his death Irving Bushlow was self-employed as an attorney in New York. Bessie has not been employed outside the home since her marriage to Irving in 1939 other than by her husband in the 1980s, when he paid her $100 per week.

In 1973 and 1974 Irving and his wife, Bessie, filed joint tax returns. They reported their income for 1973 as $25,000 and for 1974 as $28,000. Both of their signatures appear on the returns.

In 1976 an Internal Revenue Service (IRS) criminal investigator met with Irving Bushlow at his home to discuss civil cases in which Irving had allegedly made false claims on behalf of longshoremen and his failure to report certain fees as income. Bessie was present at two of these meetings.

When Irving was first called before a grand jury in December 1976 regarding the criminal investigation of George Fortunato, another individual involved in the longshoremen scheme, he asserted his Fifth Amendment privilege. After receiving a grant of immunity Irving testified before the grand jury in March and April 1977.

In June 1977 Irving and Bessie transferred their home on E. 66th Street in Brooklyn to their son, defendant Theodore Bushlow, for "consideration of ten dollars and other valuable consideration." Bessie and Theodore now say the valuable consideration was Theodore's promise to return from California to New York and take over his father's law practice. They say that Bessie and Irving were planning to leave New York for California and that Theodore would remit to them part of the legal fees from Irving's law practice.

Bessie and Irving did not move to California. Theodore did not take over Irving's practice or remit fees, but he did move to New York and work for his father for a salary. Bessie and Irving did not move out of E. 66th Street, and Theodore has not resided there since title was transferred to him. Until 1988 Irving continued to make all mortgage payments.

From December 1983 to April 1985, IRS assessed Irving individually for unpaid taxes for 1975 to 1982 amounting to $300,000, excluding penalties and interest.

In May 1985 the IRS sent a notice of deficiency to Irving and Bessie informing them that they jointly owed taxes for unreported income of approximately $210,000 in 1973 and $230,000 in 1974.

An attachment to the Notice stated that 26 U.S.C. § 6013, the "innocent spouse" provision, does "not relieve either spouse of liability." The IRS therefore assessed both Bessie and Irving for additional taxes of $104,554 for 1973 and $112,587 for 1974. Although IRS assessed fraud penalties under 26 U.S.C. § 6653(b) against Irving, the attachment stated that "since no part of the underpayment is due to fraud on the part of Mrs. Bessie Bushlow, the fraud penalty … does not apply to her." In September 1985 the IRS filed tax liens as to the Bushlows' tax liabilities.

In November 1986 a check in the amount of $45,000 from the account of "Bessie Bock," Bessie's maiden name, was endorsed by Bessie Bock to Theodore. Theodore then endorsed that check to the seller of a cooperative apartment on Remsen Street in Brooklyn (the Remsen coop) as a down payment towards purchase.

In September 1987 Irving took out a life insurance policy for $200,000 designating Bessie as beneficiary.

In June 1988 Theodore took out a $200,000 mortgage on the E. 66th property from defendant Greenpoint Savings Bank (Greenpoint). He says he used most of the proceeds to improve the Remsen coop.

In December 1988 the government initiated this action. Although Irving Bushlow was named as a defendant, he died in 1989 before he was served. The government later dismissed him from the case without prejudice since he appeared to have no assets in his name on his death.

In March 1993 IRS levied on and seized approximately $175,000, reflecting the balance of the life insurance proceeds Bessie received on Irving's policy.

## II.

The government moves for summary judgment (a) finding Bessie liable for the taxes due for 1973 and 1974, (b) setting aside the conveyance of the E. 66th property to Theodore as fraudulent and foreclosing the tax liens against it, (c) finding that Theodore's equity in his Remsen coop is traceable to funds from Irving and subject to federal tax liens, and (d) denying Bessie's counterclaim to recover the life insurance proceeds.

Defendants cross-move for summary judgment finding (a) Bessie an "innocent spouse" not responsible for her husband's tax liabilities, (b) that the statute of limitations has run on Irving and Bessie's tax liabilities for 1973 and 1974, (c) the conveyance of the E. 66th Street property was not fraudulent and that it is beyond the reach of IRS's tax liens, and (d) that Bessie is entitled to recover the $175,000 in life insurance proceeds that IRS levied.

A. *Liability of Bessie Bushlow for 1973 and 1974 taxes*

■ The government submits copies of the Bushlows' 1973 and 1974 tax returns containing both their signatures. Defendants now question the authenticity of Bessie's signatures.

Bessie stated at her 1991 deposition "it might be, but I don't really know" about the 1973 return and denied that the signature on the 1974 return was hers. In fact she testified at her deposition that she never signed anything during the entire time she was married. In response to a government request for an admission under Fed.R.Civ.P. 36 Bessie denied "upon information and belief" that the 1974 return signature was genuine.

The government produces expert testimony that positively identifies the signatures of Bessie Bushlow on both the 1973 and 1974 returns as authentic. Furthermore, Irving testified before the grand jury on March 31, 1977 that Bessie signed their 1973 tax return. This court finds no issue of fact as to the validity of those signatures. *See* 26 U.S.C. § 6064 (signature on tax return is presumed authentic).

■ Defendants also assert that Bessie is an "innocent spouse" not liable for her husband's misrepresentations on their joint tax returns. Although the IRS explicitly stated in 1984 that it did not consider either Bessie or Irving an innocent spouse, Bessie did not challenge that decision until her answer filed in this action in 1989.

Section 6013 of Title 26 of the United States Code states in relevant part:

**(e) Spouse relieved of liability in certain cases—**

(1) ... if

(A) a joint return has been made under this section for a taxable year,

(B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse,

(C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and

(D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement,

then the other spouse shall be relieved of liability for tax ... for such taxable year to the extent such liability is attributable to such substantial understatement.

■ The taxpayer bears the burden of proving that she or he is an innocent spouse. *Clevenger v. Commissioner,* 826 F.2d 1379, 1382 (4th Cir.1987). The taxpayer must prove that each of the requirements under § 6013(e) has been met. *Shea v. Commissioner,* 780 F.2d 561, 565 (6th Cir.1986).

The government concedes that § 6013(e)(1)(A) and (B) have been met since the tax liabilities stem from Irving's substantial understatement of income from his law practice. They dispute that (a) Bessie was unaware of the understatement and that (b) it would be inequitable to hold her liable.

The evidence shows that the Bushlows reported a total income of $25,000 for 1973 and of $28,000 for 1974. It also shows that the Bushlows lived in a private house, owned a Cadillac at some time in the 1970s, and supported their son Theodore in college and law school. The Bushlows' accountant testified that he never discussed the tax returns in question with Bessie and that he had not observed that she was involved in Irving's law practice in any way. Bessie testified that her husband paid all the bills and that she never discussed finances with him.

The test for knowledge under § 6013 as to omitted income is "whether a taxpayer knew or should have known of an income-producing transaction that his or her spouse has not reported on the joint return." *Erdahl v. Commissioner,* 930 F.2d 585, 589 (8th Cir. 1991) (citing *Quinn v. Commissioner,* 524 F.2d 617, 622 (7th Cir.1975)).

The defendants have presented enough to raise a question of fact as to Bessie's knowledge of Irving's understatement of his income.

Whether it is inequitable to hold an unknowing spouse liable depends on the benefit the spouse derived from the unpaid taxes. When a spouse receives "a considerable amount of property purchased with funds ... not reported as income," whether by survivorship or other means, she has received benefit from the tax deficiencies and will be held liable. *Estate of Gryder v. Commissioner,*

705 F.2d 336, 339 (8th Cir.), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 525, 78 L.Ed.2d 709 (1983). *See also Altman v. United States,* 738 F.Supp. 83 (E.D.N.Y.1990) ("The mere fact that IRS did not assess fraud penalties against plaintiff ... is insufficient, as she may have had no fraudulent intent and yet have benefitted from and been aware of her husband's unreported income."). A spouse will be considered to have received a benefit when the couple is "able to maintain a higher standard of living because of the significant tax benefits" of the inaccurate returns. *Hayman v. Commissioner,* 992 F.2d 1256, 1263 (2d Cir.1993).

The evidence shows that other than $20,000 inherited from her parents in 1962 or 1963 and a few thousand dollars Irving paid her for work at his office, Bessie has had no independent source of income since she was married. On Irving's death in 1989 Bessie received $200,000 on Irving's life insurance policy. At a deposition in January 1991 Bessie denied having a checking or savings account or owning any stocks or bonds.

Yet there are accounts in the name of Bessie Bock and Theodore Bushlow showing a combined balance of approximately $85,000 in 1976. Bessie made withdrawals from an account at Anchor Savings bank under her maiden name of approximately $60,000 in the mid 1980s and of approximately $200,000 soon after Irving's death in 1989. IRS has also discovered under the name of Bessie Bock municipal bonds from 1985, a brokerage account with Shearson Lehman Brothers from at least 1988, and certificates of deposit and an interest in Silver Screen Partnership from at least 1990.

There is a safe deposit box at Anchor Savings bank in the name of Whol–Sub Inc., for which in 1986 Bessie Bock signed as president and secretary, Theodore signed as vice president, and Irving as treasurer.

Although Bessie denies or says she does not recognize her signature as genuine on many of these transactions, the government's expert confirms that the signatures are not forged.

Bessie's 1988 tax return shows reported income of $4500 from interest and rents or partnerships. Although the records of her financial transactions in 1973 and 1974 are scant, the government says this is because Bessie waited several years before raising the innocent spouse defense. In any event gifts to a spouse may be considered under § 6013 "even when the benefit is received 'several years after the years in which the omitted item should have been included in gross income.'" *Hayman,* 992 F.2d at 1262 (quoting *Estate of Krock v. Commissioner,* 93 T.C. 672, 679 (1989)).

Finally Bessie admits that she tried to defeat an IRS levy on her bank accounts in February 1991 by withdrawing a certified check before the bank was informed of the levy and giving it to her attorney to cash.

In support of their contention that it would be inequitable to hold Bessie liable, defendants say only that Irving lent money to one George Fortunato and that therefore Bessie never benefitted from Irving's unreported income. They do not suggest that Bessie received funds from anyone but Irving and fail to explain Bessie's use of her maiden name, thereby concealing the funds for a time from IRS, long after she had legally changed her name to Bushlow. Defendants argue that Bessie's assets are attributable only to her inheritance from her parents and the life insurance proceeds from Irving's policy. This contention does not square with the evidence described above.

The court holds that defendants have presented no credible evidence to meet their burden of proving that Bessie did not benefit from the unreported income. Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

**B.** *Statute of limitations*

Defendants argue that the statute of limitations bars IRS from collecting the 1973 and 1974 taxes.

IRS must ordinarily assess taxes within three years, 26 U.S.C. § 6501(a), or within

six years when the taxpayer omits to report more than 25% of gross income, § 6501(e). The Bushlows failed to report more than 90% of their income. IRS can agree with the taxpayer to extend the time, § 6501(c)(4), and a "false or fraudulent return with the intent to evade tax" may be assessed at any time, § 6501(c)(1).

In July 1979, or within the applicable six-year time limit, Irving and Bessie signed an agreement to extend the time for assessments for their 1973 and 1974 taxes until December 31, 1980. They signed further agreements in 1980, 1981, and 1982 continuously extending the time to collect until December 1983. In October 1983 their attorney signed an extension of time until December 31, 1984. That extension stated that "However, if a notice of deficiency in tax for any such period(s) [December 31, 1973 and December 31, 1974] is sent to the taxpayer(s) on or before that date, then the time for assessing the tax will be further extended by the number of days the assessment was previously prohibited, plus 60 days." This refers to 26 U.S.C. § 6213(a), which prohibits IRS from assessing taxes for 90 days after a notice of deficiency is mailed. Since the IRS mailed a notice of deficiency to the Bushlows on December 24, 1984, IRS had 150 days from that date, or until May 23, 1985 to make an assessment. IRS's assessment on May 5, 1985 for the Bushlows' 1973 and 1974 taxes is therefore timely.

Moreover, Irving admitted before the grand jury that he underreported his income, and defendants have not even attempted to provide an innocent explanation. It is inescapable that Irving, a lawyer, understated his income nearly tenfold with the intent to defraud the government. The taxes therefore could be assessed at anytime. 26 U.S.C. § 6501(c)(1). Although defendants argue that Irving's death deprives the government of proving his fraudulent intent, IRS assessed penalties for fraud against Irving during his lifetime. He did not timely challenge that finding. *See* 26 U.S.C. § 6213 (taxpayer has 90 days from date of mailing of notice of deficiency to challenge calculation of tax). *See also Estate of Temple v. Commissioner,* 67 T.C. 143 (1976) (estate of deceased taxpay-

er timely challenged finding of fraud but court found the circumstantial evidence of fraud—taxpayer's gross understatement of income and surrounding circumstances—clear and convincing).

■ Defendants challenge the use of Irving's grand jury testimony either to show that Bessie signed the 1973 tax return or that Irving understated his income with intent to defraud the government.

The government received a copy of the grand jury minutes by an order of Judge Bramwell pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure. Judge Bramwell granted the government's motion on an affidavit stating that the grand jury minutes were necessary to determine the civil tax liabilities of George Fortunato and Irving Bushlow, a sufficient showing under the law as applied at that time.

Defendants object that the Supreme Court later found that the government's need to calculate taxes was insufficient to grant access to grand jury minutes under Rule 6(e). *United States v. Baggot,* 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983). They cite no case applying *Baggot* retroactively. *See United States v. (Under Seal),* 783 F.2d 450 (4th Cir.1986) (denying retroactive application of *Baggot* ). This court has previously declined to do so. *Altman v. United States,* 738 F.Supp. 83, 85 (E.D.N.Y.1990).

## C. *Conveyance of the E. 66th Property*

The government seeks to set aside the Bushlows' transfer of their E. 66th Street property to Theodore on the grounds of actual or constructive fraud under New York Debtor and Creditor Law §§ 270 *et seq.*

Defendants argue that such action is barred by the six-year statute of limitations for fraud actions in New York, or alternatively, by the one-year statute of limitations provided in 26 U.S.C. § 6901, covering assessments of transferees. It is not disputed that this proceeding against Theodore would be barred under both time limits.

■ The United States is not bound by state law statutes of limitations. *United States v. Summerlin,* 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940); *United States v.*

*Podell,* 572 F.2d 31, 35 n. 7 (2d Cir.1978). Section 6901 provides a summary procedure by which IRS can directly assess the transferee of a taxpayer. The government has not assessed Theodore and therefore has not proceeded under that section. Furthermore the remedies under § 6901 are not exclusive. *Ochs v. United States,* 305 F.2d 844, 158 Ct.Cl. 115 (1962), *cert. denied,* 372 U.S. 968, 83 S.Ct. 1093, 10 L.Ed.2d 131 (1963); *United States v. Motsinger,* 123 F.2d 585 (4th Cir. 1941).

█ Although the government does not mention any statute of limitations that applies when it sues to set aside a fraudulent conveyance, this court finds that the statute of limitations in 26 U.S.C. § 6502 applies. Section 6502 states that where a timely tax assessment is made "such tax may be collected ... by a proceeding in court, but only if ... the proceeding [is] begun—(1) within 6 years after the assessment of the tax...." This cause of action, though brought against Theodore, is to collect taxes owed by Irving. Because the tax assessments against Irving were made from December 5, 1983 to December 16, 1985, this action brought in 1988 is timely. *See Motsinger,* 123 F.2d at 587–89 (in action against taxpayer's fiduciary § 6502 statute of limitations applies); *United States v. Carney,* 796 F.Supp. 700, 702 (E.D.N.Y. 1992) (§ 6502 statute of limitations applies to IRS action to set aside fraudulent conveyance); *United States v. Rose,* 227 F.Supp. 259 (E.D.Pa.1964) (§ 6502 statute of limitations applies to action against estate not brought under § 6901).

In New York a conveyance made with intent "to hinder, delay, or defraud either present or future creditors" is fraudulent and may be set aside. N.Y.Debt. & Cred.Law § 276. Alternatively, a conveyance made without "fair consideration" and that renders the conveyor insolvent is fraudulent, without regard to actual intent, and may be set aside. N.Y.Debt. & Cred.Law § 273.

█ The United States is deemed a creditor as of the date the obligation to pay taxes accrues. *United States v. Red Stripe,* 792 F.Supp. 1338, 1342 (E.D.N.Y.1992); *United States v. 58th Street Plaza Theatre, Inc.,* 287 F.Supp. 475, 501 (S.D.N.Y.1968). It was therefore a creditor of Bessie and Irving when they transferred their home to Theodore in 1977.

█ The evidence of intentional fraud under § 276 is as follows. In April 1976 government investigators interviewed Irving regarding his relationship to George Fortunato. In February 1977 the government subpoenaed Irving's tax records, and in March and April 1977 Irving testified before the grand jury that his 1973 tax return "minimized" his income by approximately $100,000. Irving and Bessie transferred the property less than two months later. After the transfer Bessie and Irving continued to reside at E. 66th Street, and Theodore did not move in. Irving continued to pay the mortgages; neither he nor Bessie paid rent to Theodore.

Defendants argue only, and erroneously, that since Irving is dead and cannot testify as to his state of mind the government cannot prove actual fraud. *See Marine Midland Bank v. Murkoff,* 120 A.D.2d 122, 508 N.Y.S.2d 17, 21 (2d Dep't 1986) (creditor may show fraud "by inference from the circumstances surrounding the allegedly fraudulent act"), *appeal dismissed,* 69 N.Y.2d 875, 514 N.Y.S.2d 1029, 507 N.E.2d 322 (1987). But Theodore testified at his deposition that Irving promised to transfer the property to him to induce him to return to New York and take over Irving's law practice. Irving and Bessie then hoped to move to California. Theodore did return to New York and work for his father but did not take over the practice. Irving took and passed the California bar, but he and Bessie did not move to California. The credibility of Theodore's testimony cannot be resolved on a motion for summary judgment, and the government's evidence is insufficient on the papers to show actual fraud. The government has therefore not shown that it is entitled to attorneys' fees under § 276–a. N.Y.Debt. & Cred.Law § 276–a (attorneys' fees available to creditor who shows intentional fraud under § 276").

But there are no issues of fact as to whether the transfer was constructively fraudulent under § 273. In June 1, 1977 Bessie and Irving transferred their home to Theodore. The form language of the instrument of

transfer recited that "Ten Dollars and other valuable consideration" were given in exchange for the property. In the margin of the instrument is written "No consideration."

Defendants have not alleged that Theodore paid his parents any money for the E. 66th property. Defendants allege that Theodore gave valuable consideration in that he promised to return to New York and take over his father's law practice. The promise was unwritten and apparently unenforced, and Theodore received a salary for his work for Irving.

New York Debtor and Creditor Law defines fair consideration as follows:

a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

§ 272.

Promises of future services are not mentioned in that section as, and courts have found that they cannot constitute, fair consideration. *See Red Stripe,* 792 F.Supp. at 1343; *Orbach v. Pappa,* 482 F.Supp. 117, 120 (S.D.N.Y.1979); *Kleinfeld v. Pedersen,* 116 A.D.2d 970, 498 N.Y.S.2d 596 (4th Dep't 1986).

Defendants have failed to show any question of fact as to whether fair consideration was paid.

■ When a debtor transfers property without consideration the debtor has the burden of proving solvency to avoid a finding of fraud under § 273. *Red Stripe,* 792 F.Supp. at 1342, *United States v. Orozco–Prada,* 636 F.Supp. 1537, 1541 (S.D.N.Y.1986), *aff'd* 847 F.2d 836 (2d Cir.1988). The government indicates that Bessie and Irving's joint tax liability exceeded $200,000 and that Irving was liable for an additional $100,000 in fraud penalties. Irving individually owed an additional $100,000 for unpaid taxes for 1975 and 1976. The government offers no evidence as to Bushlows' assets in 1977, though it is not disputed that Irving died with no assets to his name and his tax debts for 1973 to 1982 were at least $1 million.

Defendants do not assert and have introduced no evidence to show that after the transfer Bessie and Irving had assets exceeding their debts. Nor do they indicate that Irving's death has rendered such records unavailable. In fact defendants do not argue in their papers that the government's proof of constructive fraud is inadequate. They argue only that the government has failed to show Irving's fraudulent intent in transferring the property.

This court finds that defendants have failed to show any issue of fact as to whether the transfer of the E. 66th Street property was fraudulent within the meaning of § 273. *See Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552.

Having shown it is entitled to summary judgment on the issue of fraud under § 273, the government may set aside the fraudulent transfer. N.Y.Debt. & Cred.Law § 278.

Theodore executed a mortgage with Greenpoint in 1988 transferring a partial interest in the E. 66th property in exchange for $200,000. The transfer to Greenpoint was therefore for fair consideration, and there is no indication that Greenpoint was aware of any fraud. Greenpoint's interest would therefore not be subject to the government's right to set aside the fraudulent conveyance. *See* N.Y.Debt. & Cred.Law § 278(1) (exempting "a purchaser for fair consideration without knowledge of the fraud at the time of purchase"); *Orozco–Prada,* 636 F.Supp. at 1542. The government concedes that Greenpoint's interest should be satisfied first out of the proceeds of any sale of the property.

■ The government seeks to hold Theodore liable "in law or in equity" for the amount it pays to Greenpoint to satisfy the mortgage. Where a "transferee has disposed of the property or has damaged it, the [creditor] should have personal judgment against the transferee for the value." *Irving Trust Co. v. Conte,* 22 F.Supp. 94, 95 (S.D.N.Y.1937); *Murkoff,* 120 A.D.2d at 133,

508 N.Y.S.2d at 24–25 (a money "judgment may be granted ... where the grantee has disposed of the wrongfully conveyed property or depreciated it"). Defendants implicitly concede that if Bessie is liable for the joint tax assessments then Theodore is liable for the decrease in value of the E. 66th Street property resulting from the imposition of the $200,000 mortgage. Theodore is therefore liable for any depreciation in the value of the property attributable to the $200,000 mortgage.

The government further claims a lien on the appreciation in Theodore's Remsen coop attributable to the $200,000 used for improvements. It has not shown either that the E. 66th Street property was conveyed with the purpose of allowing Theodore to take out a mortgage for improvements on a coop (that he did not then own) or that Theodore knowingly participated in the fraud. The government has therefore failed to show it is entitled to summary judgment as to the appreciation on the Remsen coop attributable to the expenditure of the $200,000.

### D. *$45,000 down payment on Remsen coop*

■ The government also seeks to hold Theodore liable for the $45,000 check he received from Bessie and used as a down payment for the Remsen coop and also to subject the equity in the coop attributable to such $45,000 to its tax liens for Irving's tax debts.

As noted above, the $45,000 check was signed by Bessie Bock on an account under that name. The government's handwriting expert says that the signature belongs to Bessie Bushlow.

The government argues that since Bessie had no income of her own, the money must have come from Irving. The government's lien on Irving's property did not attach until the taxes were assessed, 26 U.S.C. § 6321. *See United States v. General Motors Corp.,* 929 F.2d 249 (6th Cir.1991) (tax liens cannot attach to previously assigned property). The earliest dated assessment mentioned in the complaint is December 5, 1983 for taxes owed for 1982. But the government's evidence shows that the account from which the $45,-000 was drawn contained a balance of $43,000 as of November 30, 1983.

The government argues in a footnote that the transfer from Irving to Theodore of the $45,000 was fraudulent but does not allege any fraud on the part of Bessie or provide further evidence of when or if the transfer from Irving to Bessie occurred.

Questions of fact therefore exist as to whether, if Bessie received the $45,000 from Irving, that transfer occurred before the government's lien attached or was fraudulent, or whether the transfer from Bessie to Theodore was fraudulent.

Since there are such issues of fact, summary judgment is not appropriate as to whether the government can undo Bessie's transfer to Theodore and whether it is entitled to the appreciation on Theodore's coop attributable to the $45,000.

### E. *Irving's life insurance policy*

■ Finally defendants have counterclaimed against the government for the levy of $175,000 in life insurance proceeds from Irving's policy designating Bessie as beneficiary, and the government seeks summary judgment dismissing that counterclaim.

The government says that it has levied these funds to satisfy the tax debts owed by Irving individually, not those jointly owed by Bessie and Irving.

■ It is not disputed that Irving made payments on the insurance policy in 1987, after all tax assessments and thus after a federal tax lien attached to all of his property. 26 U.S.C. § 6321. State law determines the nature of the property to which the lien attached. *United States v. Bess,* 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958). In *Bess* the Court found that under New Jersey law the taxpayer's interest in his life insurance policy while alive was limited to the cash surrender value, and that the IRS lien therefore attached only to that amount. In the absence of a lien the government could collect on life insurance policies only to the extent that other creditors may do so under state law. *Id.* 357 U.S. at 53, 78 S.Ct. at

1056 (citing *Commissioner v. Stern*, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958)).

The government may therefore collect on its liens for Irving's tax liabilities on any interest that he had in the policy during his lifetime. Because Irving's interest in the policy was limited to the cash surrender value at his death, which the record shows was $2520.82, the lien attached to that amount. *United States v. Behrens*, 230 F.2d 504 (2d Cir.) (absent fraud government may collect from transferee based on tax lien), *cert. denied*, 351 U.S. 919, 76 S.Ct. 709, 100 L.Ed. 1451 (1956).

▆▆▆ Under New York Law a creditor may collect from life insurance proceeds only "the amount of premiums or other consideration paid with actual intent to defraud creditors as provided in [N.Y.Debt. & Cred.Law §§ 270 *et seq.*] together with interest on such amount." N.Y.Ins.Law § 3212. Absent actual fraud life insurance proceeds are exempt from collection, and proof of constructive fraud is insufficient for a creditor to overcome the exemption. *Hubbard v. Millard*, 156 A.D.2d 233, 235, 548 N.Y.S.2d 495, 497 (1st Dep't 1989).

Although it may do so at trial, the government has failed to show on this motion for summary judgment that Irving actually intended to defraud the government when he paid the premiums on his life insurance policy.

▆▆▆ Assuming that the government demonstrates actual fraud, the court determines that only the premiums and not the actual proceeds paid on the policy are subject to collection. *Hubbard*, 156 A.D.2d at 235, 548 N.Y.S.2d at 497. *See also Bess*, 357 U.S. at 56–59, 78 S.Ct. at 1058–59 (IRS lien limited to cash surrender value of policy). The government's exhibits show that the premiums paid by Irving amounted to $15,884.63.

The government has failed to justify an entitlement to the entire proceeds of the insurance policy based on Irving's tax liabilities. The government cites *United States v. Behrens*, 130 F.Supp. 93 (E.D.N.Y.1955), *aff'd*, 230 F.2d 504 (2d Cir.1956), in support of its position but it misstates the holding of that case. The court in *Behrens* addressed only "whether a Government lien ... for taxes assessed against a decedent attaches to the *cash surrender value* of life insurance policies, taken out by" the taxpayer (emphasis added).

The government has not addressed any right it has to levy on the $175,000 based on its liens on Bessie's property for her tax liabilities. *See Bess*, 357 U.S. at 57–57, 78 S.Ct. at 1058 (once it is determined under state law that the decedent had an interest "state law is inoperative to prevent the attachment of liens created by federal statutes in favor of the United States"); *Glass City Bank v. United States*, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945) (tax liens attach to property acquired any time before liens expire).

### III.

Proceedings before the magistrate judge show that defendants' compliance with discovery has been less than adequate. The government asks this court to order an accounting of Bessie and Theodore's assets. This court refers the case to Magistrate Judge Ross for further pretrial discovery. Should defendants fail to comply, the magistrate judge should consider appropriate sanctions.

### IV.

In summary, the court holds that (a) defendant Bessie Bushlow is liable for taxes owed on tax returns filed jointly with her husband for 1973 and 1974; (b) the 1977 transfer of the E. 66th property was constructively fraudulent and may be set aside; (c) Theodore is liable for the depreciation in the value of the E. 66th property attributable to the $200,000 mortgage; (d) the IRS's right to collect on the proceeds from Irving's life insurance policy based on his tax liabilities is limited to the amount Irving paid in premiums.

The government may have partial summary judgment to the extent above indicated and its motion for summary judgment is otherwise denied. Defendants' cross-motion for summary judgment is denied except to the extent indicated.

The case is referred to Magistrate Judge Ross for further discovery.

So ordered.