[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-15834
Non-Argument Calendar

_____

D.C. Docket No. 6:10-cr-00190-ACC-GJK-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BLAYNE DAVIS,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 27, 2012)

Before CARNES, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Following a jury trial, Blayne Davis appeals his convictions for wire fraud, in violation of 18 U.S.C. § 1343, relating to a "Ponzi scheme" in which Davis offered investment opportunities in the foreign exchange market at a guaranteed rate of return. On appeal, Davis argues that: (1) the district court erred by allowing the government to cross-examine Davis about other "bad acts"; (2) the prosecutor made improper comments during closing argument; and (3) the cumulative effect of these enumerated errors deprived Davis of a fundamentally fair trial. After review, we affirm.

## I. DAVIS'S DEFENSE AND GOVERNMENT'S CROSS-EXAMINATION

At trial, Davis's defense was that he was a victim and unwitting pawn of a man named Rich Ellis, who actually perpetrated the fraud scheme. On direct examination, Davis testified that he merely passed along his own money and the money of his investors to Ellis, whom he believed was investing the money in the foreign exchange market. Davis stated that he did not make any money off the investments he made for others; that he had promised his investors he would "always make it right"; and that he "did make good ultimately and [he] did make everyone whole."

On cross-examination, the government elicited from Davis that he "made everyone whole" by settling investors' claims against him; that the funds he used

2

to settle those claims came from Capital Blu, a company he worked for that was "shut . . . down" by the U.S. Commodity Futures Trading Commission ("CFTC"). Davis further admitted that the CFTC filed a civil suit against Capital Blu and Davis personally and that a default judgment was entered against Davis in that civil action.

In light of Davis's testimony on direct examination that he kept his promise to make his investors whole, the district court did not abuse its discretion in allowing the government to elicit testimony from Davis about the source of the funds he used to repay his investors. Indeed, the source and fraudulent nature of Davis's restitution funds became "an integral and natural part of an account of the crime" necessary "to complete the story of the crime for the jury." See United States v. McNair, 605 F.3d 1152, 1203 (11th Cir. 2010) (quotation marks omitted) (concluding that such intrinsic evidence is not prohibited by Rule 404(b)(1)); United States v. Ellisor, 522 F.3d 1255, 1269 (11th Cir. 2008) (same). Furthermore, the prosecutor's inquiry into Davis's involvement with Capital Blu was permissible under Federal Rule of Evidence 608(b)(1). See United States v. Novaton, 271 F.3d 968, 1006 (11th Cir. 2001) (stating that acts probative of a witness's character for untruthfulness for Rule 608(b)(a) purposes include fraud).

We also find no abuse of discretion in the district court's allowing the

prosecutor to elicit from Davis that he failed to file a tax return in 2008. During

cross-examination, Davis volunteered that he had a forensic accountant reviewing

whether he may have overpaid his taxes in 2008.[1] The record shows that Davis's

statement was unsolicited by the government, and, thus, Davis effectively opened

the door to the prosecutor's questioning. The record belies Davis's claim that he

"never said he filed a tax return in 2008." To explain why he was unsure about the

reported income on his 2006 tax return, Davis stated that a forensic accountant

was trying to ascertain whether Davis had overpaid in 2006, 2007 and 2008.

Implicit in this testimony is the fact that Davis had paid taxes, and thus had filed a

tax return, in 2008.

## II.  CLOSING ARGUMENT

Because Davis did not contemporaneously challenge the prosecutor's

---

[1]Specifically, when Davis testified that he would need to see his tax return to know how much money he made in 2006, the prosecutor gave Davis a copy of a 2006 tax return, which Davis had submitted as part of a 2008 loan application, in order to refresh Davis's memory. The tax return stated that Davis had earned $431,000 in 2006. Davis testified that he was unsure whether that figure was correct and elaborated, "I have a forensic accountant in Fort Worth going through all of these bank statements, which seem to be all over the place right now, to really ascertain how much money based upon the settlements that I've had overpaying in '06, '07, and '08."

The prosecutor then asked Davis whether he filed a tax return in 2008, and Davis admitted that he had not. At this point, defense counsel objected, arguing that the government was attempting to introduce evidence of other offenses. The prosecutor responded that he was impeaching Davis, not eliciting extrinsic evidence. Davis clarified that he had not filed a return, and that "a forensic accountant [was] going through to ascertain what [his] tax liability is . . . ." The district court directed the prosecutor to move on, but declined Davis's request to give a curative instruction. The district court explained, "I don't think that's something the jury has to disregard. So he's moving on. It's not extrinsic evidence. He was clearing up a misstatement that the defendant testified to."

4

comments during closing, we review these claims only for plain error. See United States v. Newton, 44 F.3d 913, 920 (11th Cir. 1995). "For there to be plain error, there must (1) be error, (2) that is plain, (3) that affects the substantial rights of the party, and (4) that seriously affects the fairness, integrity, or public reputation of a judicial proceeding." United States v. Foley, 508 F.3d 627, 637 (11th Cir. 2007) (quotation marks omitted). A prosecutor's statement prejudicially affects a defendant's substantial rights "when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." United States v. Eckhardt, 466 F.3d 938, 947 (11th Cir. 2006). We conclude Davis has not carried his burden to show that either challenged comment affected his substantial rights.

Davis first points to the prosecutor's statement that Davis had the burden to prove his good-faith defense. It is improper for a prosecutor to shift the burden of proof to the defendant, United States v. Bernal-Benitez, 594 F.3d 1303, 1315 (11th Cir. 2010), and, in a wire fraud prosecution, the government must prove the defendant's intent to defraud. United States v. Pitt, 717 F.2d 1334, 1339 (11th Cir. 1983).

Although the prosecutor initially misstated the burden of proof, he immediately corrected his misstatement and told the jurors, "It's still our burden. We have the burden of proving that he committed these crimes beyond a

5

reasonable doubt. It's not their burden." In addition, the district court correctly instructed the jury before closing argument began that the government bore the burden of proving Davis's guilt beyond a reasonable doubt, that the burden never shifted to the defendant and that the attorney's arguments were not evidence or instructions of law. Again, just prior to the jury's deliberations, the district court correctly instructed the jury, inter alia, that good faith was a complete defense, and that the defendant did not have to prove good faith. Instead, the government was required to prove the defendant's intent to defraud beyond a reasonable doubt.

Moreover, the government presented substantial circumstantial evidence of Davis's intent to defraud, including numerous witnesses who testified that: (1) Davis promised them that, if they invested with him, they would receive high rates of return within a short period of time and that he would personally guarantee their investments; (2) when the investors stopped receiving money and attempted to contact Davis, he gave excuses and became unreachable; and (3) Davis gave demonstrably false statements to investors, such as his assertions that their money was delayed because the bank had changed routing numbers and that he had received a deposit of $100,000.

In addition, Davis's own testimony that he received money from investors and then passed the entire sum on to Ellis in cash was refuted by the pattern of

6

transactions reflected in his bank records, which showed that: (1) when Davis received wire transfers from investors, rather than make a cash withdrawal, he used it to pay other investors or for his own personal expenses; and (2) when Davis did withdraw cash following an investor's wire transfer, it was not for the entire amount of the transfer. Given the prosecutor's prompt correction of his misstatement, the presence of curative instructions and the strength of the government's evidence of fraudulent intent, we conclude that Davis was not prejudiced by the prosecutor's misstatement of the law. See United States v. Rodriguez, 765 F.2d 1546, 1560 (11th Cir. 1985) ("In assessing whether the accused was actually prejudiced by improper argument, we consider the presence of curative instructions and the strength of the government's case.")

Next, Davis argues that the prosecutor shifted the burden of proof by commenting on Davis's failure to call other witnesses, including Rich Ellis, to corroborate his testimony. "[A] prosecutor may not comment about the absence of witnesses or otherwise attempt to shift the burden of proof . . . ." United States v. Hernandez, 145 F.3d 1433, 1439 (11th Cir. 1998); see also United States v. Simon, 964 F.2d 1082, 1086 (11th Cir. 1992) ("[P]rosecutors must refrain from making burden-shifting arguments which suggest that the defendant has an obligation to produce any evidence or to prove innocence."). However, "the

7

prosecution can note that the defendant has the same subpoena power as the Government," and may comment on the defendant's "inability to corroborate" her testimony. United States v. Schmitz, 634 F.3d 1247, 1267 (11th Cir. 2011). The prosecutor may also comment on defense counsel's failure to counter or explain the government's evidence or direct the jury's attention to a lack of evidence supporting the defense's theory of the case. See, e.g., Bernal-Benitez, 594 F.3d at 1315; Hernandez, 145 F.3d at 1439. In addition, "prejudice from the comments of a prosecutor which may result in a shifting of the burden of proof can be cured by a court's instruction regarding the burden of proof." United States v. Simon, 964 F.2d 1082, 1087 (11th Cir. 1992); see also Hernandez, 145 F.3d at 1439.

Here, much of the prosecutor's closing argument to which Davis objects, particularly in the context of the whole trial, was permissible comment on the evidence produced at trial, the plausibility of Davis's defense and the credibility of Davis's own testimony about Rich Ellis. Moreover, it was not improper for the government to point out that Davis had the same subpoena power as the government. Even assuming arguendo that the prosecutor strayed into error when he pointed out that Rich Ellis was not on the witness list, the prosecutor also stated that the government had the burden of proof. In addition, the district court instructed the jury that the Government had the burden to prove Davis was guilty

8

beyond a reasonable doubt and that Davis was not required to prove his innocence or to produce any evidence whatsoever.  Under these circumstances, we cannot say Davis met his burden to show a reasonable probability that, but for the prosecutor's remarks, the outcome of his trial would have been different.

## III.  CUMULATIVE ERROR

Finally, we reject Davis's cumulative error claim.  As discussed above, there was no error with respect to the prosecutor's cross-examination of Davis.  In light of the trial as a whole, the prosecutor's comments during closing argument, even in the aggregate, did not affect Davis's substantial rights or deprive him of a fair trial.  See United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005) ("The harmlessness of cumulative error is determined by conducting the same inquiry as for individual error—courts look to see whether the defendant's substantial rights were affected." (quotation marks omitted)).

**AFFIRMED.**