[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11524
Non-Argument Calendar
_____

D.C. Docket No. 6:10-cr-00190-ACC-GJK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BLAYNE DAVIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 2, 2018)

Before MARCUS, ROSENBAUM and HULL, Circuit Judges.

PER CURIAM:

Blayne Davis, a federal prisoner proceeding pro se, appeals from the district court's order denying his renewed motion to unseal all of the transcripts from the grand jury proceedings that led to his indictment. Davis argues that the district court abused its discretion in denying his renewed motion to unseal. After review, we affirm.

## I.    BACKGROUND

To explain the narrow issue before the Court, we outline the extensive procedural history of Davis's first and second criminal cases.

## A.    The Original Criminal Proceeding

On July 21, 2010, a federal grand jury indicted Davis on one count of wire fraud, in violation of 18 U.S.C. § 1343. A superseding indictment, issued on January 19, 2011, identified five counts of wire fraud. The superseding indictment alleged that Davis operated a "Ponzi" scheme, beginning no later than 2005 and continuing until at least October 2006.

According to the indictment, Davis induced victims to invest their money with him, promising an extraordinary rate of return. But instead of investing their money, Davis kept most of it for himself, occasionally using money from later investors to pay off earlier victims. During the operation of his scheme, Davis provided all of his victims with fabricated spreadsheets purporting to show the

2

investments he had made and the returns they were earning.  The indictment alleged that Davis defrauded at least nine victims of over $250,000 in this manner.

In March 2011, Davis's case proceeded to a six-day jury trial.  The prosecution presented several witnesses who had invested money with Davis, all of whom were given false information about the performance of their investments.  Nevertheless, several witnesses testified that they recovered some or all of their initial investments as part of civil settlements with Davis, even if the gains on those investments had proven fictional.  The evidence also showed that Davis's victims tended to be people he knew socially.  Several witnesses testified that they met Davis while he was working as a bartender at a Red Lobster.

The final witness in the government's case was Mike Giddens, a Special Agent supervisor with the Florida Department of Law Enforcement, who had worked on the Davis investigation.  On cross-examination, Giddens was asked to provide an estimate of the total investments made by Davis's victims.  Giddens replied that one investor was "out [$]120[,000]," and "the rest of them were out about [$]300[,000]."

After the prosecution rested, Davis took the stand in his own defense.  Davis testified that "I did make good ultimately and I did make everyone whole."  However, on cross-examination, Davis acknowledged that some of his victims had testified that they did not recoup all of their initial investments.

3

On the same topic, the prosecution asked Davis whether he had paid back any of his victims with money he made from a company called Capital Blu. Davis testified that after his Ponzi scheme collapsed in 2006, he went to work for Capital Blu. Davis explained that "[t]he actual money that was used to settle these claims against me [arising from the first Ponzi scheme] were the sales of the subscription services that we started" at Capital Blu.

Davis acknowledged that the Commodity Futures Trading Commission (the "CFTC") later brought a civil enforcement action against him and his Capital Blu partners. The CFTC's complaint alleged that Davis and his codefendants had fraudulently obtained more than $17 million from over 100 investors in Capital Blu. Davis was served with the CFTC complaint while in Australia. Davis testified that when he was served, he may have said to his father, "I guess they found me." Davis did not contest the CFTC's civil allegations, and a default judgment was entered against him in the Capital Blu civil matter.

At the close of the criminal trial, the jury returned a guilty verdict on three of the five offenses in the superseding indictment. On November 30, 2011, the district court sentenced Davis to 36 months' imprisonment on each count concurrently, to be followed by three years of supervised release.

Davis appealed his convictions and sentence, which this Court affirmed on September 27, 2012. United States v. Davis, 491 F. App'x 48 (11th Cir. 2012)

4

(unpublished).  In that counseled direct appeal, this Court concluded that the district court had not abused its discretion in permitting the prosecution to cross-examine Davis about Capital Blu and the CFTC civil action, because that testimony was "'an integral and natural part of an account of the crime' necessary 'to complete the story of the crime for the jury,'" and was also probative of Davis's character for truthfulness.  Id. at 50 (quoting United States v. McNair, 605 F.3d 1152, 1203 (11th Cir. 2010)).

## B.    The First Motion to Unseal and the Motion to Vacate

In November 2012, Davis, now proceeding pro se, moved to unseal much of the materials from the grand jury proceedings that led to his indictment.  Davis argued, among other things, that Mike Giddens, the law enforcement officer who later testified at trial, may have presented perjured testimony to the grand jury. Davis asserted that he required the grand jury records to help him prepare a motion to vacate his sentence under 28 U.S.C. § 2255.  In December 2012, while his first motion to unseal was pending, Davis filed his § 2255 motion to vacate.

In January 2013, the district court denied Davis's first motion to unseal.  The district court concluded that Davis had not carried his burden of showing a particularized need for the grand jury transcripts, in part because evidence showed that witness Mike Giddens, whom Davis had accused of perjury, was actually testifying at another hearing on the day he was supposedly perjuring himself before

5

the grand jury. The district court also noted that unsubstantiated allegations of grand jury manipulation do not satisfy the particularized need standard.

In February 2013, after his first motion to unseal was denied, Davis amended his § 2255 motion to vacate. Among other grounds for relief, Davis argued that he should have been provided, during trial, with witness Giddens's grand jury testimony. Three years later, in February 2016, the district court denied the amended § 2255 motion to vacate. This Court granted a certificate of appealability on the sole issue of whether Davis's counsel was ineffective for not challenging a sentencing enhancement related to the number of Davis's victims. Davis v. United States, 696 F. App'x 431, 433 (11th Cir. 2017) (unpublished). On June 13, 2017, this Court affirmed on the merits the district court's denial of Davis's § 2255 motion to vacate his sentence. Id.

## C.    The Second Criminal Indictment and the Seeger Testimony

In February 2014, while Davis's § 2255 motion to vacate his original sentence was pending, Davis was indicted for a second time. The 2014 indictment charged Davis, along with a codefendant named Donovan G. Davis, Jr. ("Donovan"), for their involvement with Capital Blu. The 2014 indictment charged Davis in 21 of its 27 counts. Davis pleaded guilty to Count 1, in exchange for the dismissal of the remaining counts. On October 29, 2014, the district court sentenced Davis to 108 months' imprisonment.

6

Donovan, however, continued to fight the charges against him.  The case proceeded to a jury trial, after which the jury returned a guilty verdict on several counts of the indictment.  On September 23, 2015, the district court sentenced Donovan to 204 months' total imprisonment.

On September 26, 2016, Donovan filed various materials in his criminal case in support of a motion for a new trial based on newly discovered evidence.  Among these materials was a transcript of testimony from the grand jury proceedings that led to Davis's original indictment in the <u>first</u> criminal case.  The testimony in question (the "Seeger Testimony") came from Jeffrey Seeger, a United States Secret Service Agent who had assisted Mike Giddens with the Davis investigation.  Seeger testified on July 21, 2010, the date on which the grand jury originally indicted Davis.

In his grand jury testimony, Seeger made the following statements, among others (collectively, the "Contested Statements"): (1) Davis was working as a bartender at Red Lobster when he solicited at least some of his victims; (2) Davis's victims invested their money with Davis and "never got any interest or return on that investment back"; (3) Davis defrauded his victims of "close to $300,000"; (4) Davis was involved with "another scheme"—elsewhere identified as the Capital Blu matter—which was then under investigation, in which Davis defrauded investors of "[a]pproximately $17 million," some of which he used to pay back

investors in the instant scheme; (5) Davis fled to Australia and remained there for 18 months; and (6) Davis never made any actual investments with the money his victims gave him.

### D.    Davis's Renewed Motion to Unseal

On October 11, 2016, Davis filed, in his first criminal case, a renewed motion to unseal the grand jury transcripts that led to the indictment in that case, attaching the Seeger Testimony as an exhibit.  Davis requested "the complete Grand Jury transcripts for the witnesses who testified in connection with the original indictment and superseding indictment."

Davis argued that the Seeger Testimony vindicated his suspicions about improprieties in his grand jury proceedings.  Davis asserted that several of the Contested Statements were untrue and had prejudiced the grand jury against him. Although Davis did not identify a motion or avenue for relief in which he intended to use the requested grand jury materials, he alluded to "pursu[ing] the appropriate remedy" and the possibility of his indictment being dismissed.

On March 24, 2017, the district court denied Davis's renewed motion to unseal.  The district court concluded that Davis had not shown a particularized need for the materials, because (1) he had not shown that any impropriety took place, (2) he had not shown that the materials were needed in connection with

another judicial proceeding, and (3) he had not shown that the need for disclosure outweighed the need for secrecy.

Davis now appeals.

## II.    DISCUSSION

### A.    Standard of Review

We review a district court's decision to release or not release grand jury materials for abuse of discretion. United States v. Aisenberg, 358 F.3d 1327, 1338 (11th Cir. 2004). The district court's discretion in this area is "substantial." Id. at 1349.

### B.    Grand Jury Secrecy in Rule 6(e)

It is the well-settled policy of federal law that grand jury proceedings remain secret. United States v. Sells Eng'g, Inc., 463 U.S. 418, 424, 103 S. Ct. 3133, 3138 (1983). The traditional rule of grand jury secrecy is codified at Federal Rule of Criminal Procedure 6(e). Id. at 425, 103 S. Ct. at 3138. The rule specifically states:

> Unless these rules provide otherwise, the following persons must not disclose a matter occurring before the grand jury:
> (i) a grand juror;
> (ii) an interpreter;
> (iii) a court reporter;
> (iv) an operator of a recording device;
> (v) a person who transcribes recorded testimony;
> (vi) an attorney for the government; or

9

> (vii) a person to whom disclosure is made under
> Rule 6(e)(3)(A)(ii) or (iii).

Fed. R. Crim. P. 6(e)(2)(B).

Rule 6(e)(3), however, provides for several exceptions under which a district court may authorize disclosure of grand jury materials.  In particular, a district court may order disclosure:

> (i) preliminarily to or in connection with a judicial
> proceeding; [or]
>
> (ii) at the request of a defendant who shows that a ground
> may exist to dismiss the indictment because of a matter
> that occurred before the grand jury[.]

Fed. R. Crim. P. 6(e)(3)(E)(i)-(ii).

The exception in subsection (ii) of Rule 6(e)(3)(E), for dismissal of indictments, does not apply here, because Davis has already been tried and convicted and his convictions were affirmed on direct appeal back in 2012.  See Fed. R. Crim. P. 12(b)(3)(A)-(B).  This leaves the exception in subsection (i), for disclosure of grand jury materials "preliminarily to or in connection with a judicial proceeding."[1]

---

[1] The district court noted that for a request to be "in connection with" a judicial proceeding, the proceeding "must already be pending."  See United States v. Baggot, 463 U.S. 476, 479, 103 S. Ct. 3164, 3166 (1983).  The only proceeding pending when the district court denied Davis's renewed motion to unseal the grand jury transcripts was Davis's appeal from the denial of his first § 2255 motion to vacate, but that appeal concerned only the use of an unrelated sentencing enhancement.  Davis, 696 F. App'x at 433.  We therefore discuss only whether Davis

A private party seeking disclosure of grand jury materials for use in a judicial proceeding must show: (1) that the material he seeks is needed to avoid a possible injustice in another judicial proceeding; (2) that the need for disclosure is greater than the need for continued secrecy; and (3) that the request is structured to capture only the material so needed. Aisenberg, 358 F.3d at 1347-48.

To show that the need for disclosure outweighs the need for secrecy, the party seeking disclosure must establish a "compelling and particularized need for disclosure." Id. at 1348. A particularized need may be shown by demonstrating that "circumstances had created certain difficulties peculiar to [the] case, which could be alleviated by access to specific grand jury materials, without doing disproportionate harm to the salutary purpose of secrecy embodied in the grand jury process." Id. at 1348-49 (quoting United States v. Elliott, 849 F.2d 554, 558 (11th Cir. 1988)).

Particularized need is not shown by a general allegation that grand jury materials are necessary for the preparation of a motion to dismiss. Elliott, 849 F.2d at 557. Nor is it shown by unsubstantiated allegations of grand jury manipulation. United States v. Cole, 755 F.2d 748, 759 (11th Cir. 1985). Likewise, a blanket

---

can show that he seeks the grand jury transcripts "preliminarily to" a judicial proceeding that is "anticipated." See Baggot, 463 U.S. at 480, 103 S. Ct. at 3167; Fed. R. Crim. P. 6(e)(3)(E)(i).

request for all grand jury materials is not the "kind of particularized request required for the production of otherwise secret information." United Kingdom v. United States, 238 F.3d 1312, 1321 (11th Cir. 2001).  A request of that breadth "makes it virtually impossible" for a party seeking disclosure "to demonstrate that each of hundreds of sought-after grand jury items is likely to be exculpatory."  Id.

Davis has not demonstrated a compelling or particularized need for the grand jury materials in this case, for several reasons.

First, Davis was tried and convicted by a petit jury.  The petit jury found him guilty beyond a reasonable doubt on three of the counts charged in the indictment.  A petit jury's subsequent guilty verdict "means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt."  United States v. Mechanik, 475 U.S. 66, 70, 106 S. Ct. 938, 941-42 (1986).  When a petit jury returns a guilty verdict, "any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt."  Id.

Second, Davis has not demonstrated that any perjured or prejudicial testimony actually was submitted to the grand jury.  He points to the Contested Statements as evidence of prejudice and perjury.  But most, if not all, of the Contested Statements by Seeger before the grand jury were introduced at Davis's trial, or were at least presented to the jury to be weighed as evidence at trial.

12

Notably, Davis himself testified about his involvement in Capital Blu and the CFTC's civil complaint against him. This Court already concluded that the district court did not abuse its discretion in permitting that testimony, as it was integral to the story of the whole crime. Davis, 491 F. App'x at 50.

Evidence was also presented at trial that Davis met several of his victims through his job as a bartender at Red Lobster, that his victims gave him approximately $300,000 to invest, that not all of the victims were made whole after Davis's scheme was uncovered, and that Davis was in Australia when he was served with the CFTC civil complaint. Davis quarrels with Seeger's assertions that Davis never made any investments at all, and that none of his victims realized any gains, but he presents no evidence to contradict that testimony.

In short, most of the Contested Statements were either repeated or approximated at trial, and were believed by the jury. Under these circumstances, we do not find that the Contested Statements demonstrate a "compelling need" for more disclosure that is "required by the ends of justice." See Aisenberg, 358 F.3d at 1349.

Finally, Davis's request is not structured to capture only those materials he requires. Aisenberg, 358 F.3d at 1347-48. Davis requested "the complete Grand Jury transcripts for the witnesses who testified in connection with the original indictment and superseding indictment." That kind of blanket request is not the

13

"kind of particularized request required for the production of otherwise secret information." United Kingdom, 238 F.3d at 1321.

In sum, Davis has not shown either a compelling or a particularized need for the transcripts of his grand jury proceedings. Aisenberg, 358 F.3d at 1348-49. His request is also not tailored to capture only those materials he requires. Id. at 1347-38. Because Davis has not demonstrated a need for the requested materials, there is no reason to disturb the general rule requiring secrecy of grand jury proceedings. Id.; Sells Eng'g, Inc., 463 U.S. at 424, 103 S. Ct. at 3138.  The district court acted within its discretion when it denied Davis's renewed motion to unseal.

## III.  CONCLUSION

Based on the foregoing reasons, we conclude that the district court did not abuse its discretion in denying Davis's renewed motion to unseal materials from his grand jury proceedings.  We therefore affirm.

**AFFIRMED.**